JAMES M. REYNOLDS, JOHN B. BYRNE AND WILLIAM FARRIDAY, MERCHANTS, TRADING UNDER THE FIRM OF REYNOLDS, BYRNE & Co. v. JAMES S. DOUGLASS, THOMAS G. SINGLETON AND THOMAS GOING.

Commercial guaranty. ' The rule is well settled, that the guarantor of a promissory note, whose name does not appear on the note, is bound without notice; where the maker of the note was insolvent at its maturity; unless he can show he has sustained some prejudice by want of notice of a demand on the maker of the note and notice of non-payment.

If the guarantor could prove he had suffered damage by the neglect to make the demand on the maker of the note, and to give notice, he could only be discharged to the extent of the damage sustained.

In order to enable the party claiming under a guaranty, to recover from the guarantor by a 'letter' of credit, he must prove that notice of its acceptance had been given in a reasonable time after the letter of credit had been accepted. This notice need not be proved to have been given in writing, or in any particular form; but may be inferred by the jury from facts and circumstances which shall warrant such inference.

A recognition of the parties to a letter of credit of their obligation to pay as guarantors under a supposed liability, which did not arise from the facts of the case, and of which facts they were ignorant, would not be a waiver of the notice they were entitled to have of the acceptance of their guaranty.

A party to a note entitled to notice, may waive the notice by a promise to see it paid, or an acknowledgment that it must be paid; or a promise that " he will set the matter to rights;" or by a qualified promise, having knowledge of the laches of the holder.

A promise to pay a debt by the guarantors, qualified with a condition which was rejected, is not a waiver by the guarantor of his right to notice of the acceptance of the guaranty.

When the party in whose favour a letter of credit is given afterwards becomes insolvent, and his insolvency is known to the guarantors; it is not necessary, in an action on the letter of credit, to prove that a demand of payment was made on the insolvent.

IN error to the district court of the United States for the district of Mississippi.

This case was before the Court at January term, 1833, on a writ of error prosecuted by the plaintiffs in the court below; and was then remanded to the district court of Mississippi, with directions to issue a venire facias de novo, 7 Peters, 113. The facts of the case are fully stated in the case reported in 1833.

The plaintiffs again brought up the case; and it was argued by

VOL. XII.—3 R

Mr. Southard for the plaintiffs in error, and by Mr. Jones for the defendant.

Mr. Justice M'LEAN delivered the opinion of the Court:

This case is brought before this Court by a writ of error to the district court of Mississippi.

The action is founded on the following guaranty:

*Port Gibson, 27th December,* 1827.

Messrs. Reynolds, Byrne & Co.

Gentlemen,—Our friend, Mr. Chester Haring, to assist him in business, may require your aid from time to time, either by acceptances or endorsement of his paper, or advances in cash. In order to save you from harm in so doing, we do hereby bind ourselves, severally and jointly, to be responsible to you, at any time, for a sum not exceeding eight thousand dollars, should the said Chester Haring fail to do so. Your obedient servants,

JAMES S. DOUGLASS,
THOMAS G. SINGLETON,
THOMAS GOING.

On the trial, the plaintiffs proved that they treated this paper as a continuing guaranty; and from time to time, on the faith of it, accepted drafts, endorsed bills, and made advances of money at the request of Haring. And an account current was given in evidence showing a balance due to the plaintiffs, from Chester Haring, on the 1st of July, 1828, of thirteen thousand seven hundred and two dollars and seventy-three cents; on 1st of January, 1829, of thirty-two thousand nine hundred and twenty dollars fifty-seven cents; and on the 1st of July in the same year, of twenty-five thousand one hundred and nine dollars and fifty-seven cents. And eight bills of exchange, drawn by Haring on the plaintiffs, amounting to eight thousand dollars, and which were accepted and paid by them in the year 1828; were also given in evidence.

On the first of May, 1829, it was proved that Haring executed five promissory notes, in the whole amounting to twenty-five thousand dollars, which were endorsed by Daniel Greenleaf, and also by the plaintiffs; and which were payable in the months of November, December, January, February and March, succeeding; the proceeds of

which notes, when discounted, were to be credited to Haring in the general account.

On the 11th of April, 1829, Haring sold and transferred to Daniel Greenleaf his mercantile establishment, which constituted the whole of his property; and in August or September, following, he died.

At the time this transfer was made, Greenleaf gave a bond in the penalty of thirty-two thousand dollars, with Thomas G. Singleton, one of the guarantees and others security, conditioned that he would faithfully pay the debts of Haring, as therein stated; and especially after paying the home debts, "that he should pay the sum of eight thousand dollars to the securities and signers of a letter of credit to Reynolds, Byrne & Co., in favour of the concern of Chester Haring, for that amount; or otherwise relieve and exonerate the securities and signers to said letters of credit." And on the 24th of December following, Daniel Greenleaf assigned to James S. Douglass, another of the guarantees, by deed of trust, on the conditions stated therein, "all his debts, claims and demands, either at law or in equity due, or to become due." This assignment included the property, &c., he received from Haring.

One of the witnesses examined, stated, that he heard James S. Douglass and Thomas Going say, they considered the above assignments would indemnify them for their liability under the guaranty.

There was a good deal of evidence in the case, which, in considering the questions of law on the instructions, it is not material to notice.

This case was brought before this Court on certain exceptions, at the January term, 1833; at which time the following points were adjudged.

1. That the paper in question was a continuing guaranty, and was not discharged on the payment of advances, acceptances and endorsements amounting to eight thousand dollars; but that it covered future and successive advances, acceptances and endorsements.

2. That to entitle the plaintiffs to recover on the guaranty, they must show, that within a reasonable time they gave notice of its acceptance.

3. That notice of the future and successive advances, acceptances and endorsements, after the acceptance of the guaranty, was not necessary.

4. That in case of non-payment, the plaintiffs were required to

[Reynolds et al. v. Douglass et al.]

show a demand of Haring; and, within a reasonable time, a notice to the guarantees.

After the evidence was closed, the plaintiffs moved the court to instruct the jury, " if they believe that Chester Haring was insolvent previous to the maturity of any of the five promissory notes drawn by Chester Haring, dated the 1st May, 1829; and that these notes were endorsed upon the faith of the letter of credit, by the plaintiffs; then such previous insolvency rendered it unnecessary for the plaintiffs to give the defendants, as guarantors, notice of a demand upon and refusal by Chester Haring to pay the said notes; and the plaintiffs are entitled to recover. But the court refused to charge as requested; and charged the jury, that the insolvency of Chester Haring could be proved only by a record of the insolvency, or by admission of the defendants, and not by common rumor or hearsay evidence."

This instruction was incautiously drawn, and its language is open to criticism. It would seem at the first view to place the right of the plaintiffs to recover, on the fact of Haring's insolvency. This would dispense with notice of the acceptance of the guaranty, and with all evidence of advances of money by the plaintiffs, and of acceptances and endorsements under it, except the five notes referred to. But such could not have been the meaning of the instruction, as understood by the counsel concerned in the case, and by the court. Much evidence had been given of advances of money, of acceptances and of endorsements on the faith of the guaranty; and also evidence of facts, from which the jury might, in the exercise of their discretion, infer a notice to the defendants that the guaranty had been accepted. In the view of these facts, it cannot be supposed that the plaintiffs would ask the court to instruct the jury to find in their favour; aside from all the other evidence in the case; if the insolvency of Haring should be satisfactorily established.

The instruction was undoubtedly intended to cover the objection that no demand had been made of Haring on his failure to pay, nor notice given to the defendants. And that if the jury should find the notes referred to had been endorsed on the faith of the letter of credit, the previous insolvency of Haring rendered notice of a demand on him unnecessary; and consequently the want of this notice constituted no objection to the plaintiffs' recovery. That the court considered the instruction in this light, is clear from the qualification which they annexed to it. By charging the jury that the insolvency of Haring could be proved only by the admission of the defendants,

[Reynolds et al. v. Douglass et al.]

or by record evidence, the court seem to consider if the fact of insolvency were legally made out, demand and notice were unnecessary.

Although the objection to the structure of the prayer is not without force, yet we are inclined to think that if the instruction had been given in the terms requested by the plaintiffs, under the circumstances, it could not have misled the jury. They could not have understood the instruction as laying down the basis of a recovery, independent of all other evidence in the case.

In this part of the record, the question is fairly raised whether the insolvency of Haring, either prior to or at the time of payment, will excuse the plaintiffs from making a demand on him, and giving notice to the guarantees.

At the death of Haring, the notes given by him on the 1st May, 1829, and endorsed by Greenleaf, were not due. And these promissory notes, to have had an influence in the case, under the instruction, must have been endorsed by the plaintiffs on the faith of the guaranty.

An objection is made, that these notes greatly exceed in amount the guaranty; and, consequently, that they could not have been endorsed on the credit of the guarantees. The same objection is urged against the various balances, which exceed the amount of the guaranty as stated in the account current. And it is contended, that to bind the guarantees, the advances, acceptances and endorsements, although made at successive periods, on the faith of the guaranty. must not exceed it in amount.

If this objection were well founded, it could not affect the right of the plaintiffs. They have brought their action on the guaranty, and exhibit eight bills of exchange, amounting to eight thousand dollars, which they aver were accepted and paid by them on the faith of the guaranty.

The question as to the liability of the guarantees, under acceptances and endorsements, for a sum exceeding eight thousand dollars, does not, therefore, arise in this case; and it is unnecessary to consider it. The advances which were made from time to time, and also the acceptances and endorsements on the credit of the guaranty, go to show how it was considered and treated by the plaintiffs. And it was a question for the jury to determine, whether the advances, acceptances and endorsements, as alleged by the plaintiffs, were made under the guaranty.

If the insolvency of Haring was a material fact in the case, how was it to be proved?. Could it be proved only by record evidence, or by the admissions of the defendants, as decided by the district court?. No reason is perceived for this rule, and there is no principle of law that sustains it. The insolvency of Haring should be proved in the same manner as any other fact in the cause. Was he without property, and unable to pay the demands against him?. There can be no difficulty in showing his circumstances, by competent proof.

But does the insolvency of Haring, if it be established, excuse the failure to make a demand on him at the maturity of his notes; and to give notice to the guarantees.

In the case of Gibbs v. Cannon, 9 Sergt. & Rawle, 198, it was held, that on a guaranty of a promissory note. drawn and endorsed by others, if the drawer and endorser are insolvent when the note becomes due, this would, prima facie, be evidence that the guarantor was not prejudiced; and therefore the giving him notice of non-payment, is, in such case, dispensed with. And in the case of Halbrow v. Wilkins, 1 Barn. & Cressw. 10, the court say, if a guarantor of a bill be informed, before it is due, of the insolvency of the acceptors, and that the plaintiff looked to him for payment; it is not necessary to prove presentment and notice of non-payment.

In the case of Warrington and another v. Furbor and Warrington, 8 East, 242, lord Ellenborough says: the same strictness of proof is not necessary to charge the guarantees, as would have been necessary to support an action upon the bill itself, where, by the law merchant, a demand upon and refusal by the acceptors must have been proved in order to charge any other party upon the bill; and this, notwithstanding the bankruptcy of the acceptors. But this is not necessary to charge guarantees, who insure, as it were, the solvency of the principals; and, therefore, if the latter become bankrupt and notoriously insolvent, it is the same as if they were dead; and it is nugatory to go through the ceremony of making a demand upon them.

Mr. Justice Lawrence, in the same case says, that, although proof of a demand on the acceptors, who had become bankrupts, was not necessary to charge the guarantees; yet that the latter were not prevented from showing that they ought not to have been called upon at all; for that the principal debtors could have paid the bill if demanded of them. And Mr. Justice Le Blanc also says, in the same case, there is no need of the same proof to charge a guarantee, as to

charge a party whose name is upon the bill of exchange; for it is sufficient, as against the former, to show that the holder of the bill could not have obtained the money by making a demand upon the bill.

In the third volume of his Commentaries, 123, Chancellor Kent says, it has been held that the guarantor of a note could be discharged, by the laches of the holder, as by neglect to make demand of payment of the maker, and give notice of non-payment to the guarantor; provided the maker was solvent when the note fell due, and became insolvent afterwards. The rule is not so strict as in the case of mere negotiable paper; and the neglect to give notice must have produced some loss or prejudice to the guarantor.

The same principle is laid down in the following cases: Phillips v. Astling, 2 Taunt. 206; Swinyard v. Bowes, 5 M. & S. 62; Van Wert v. Woolley, 3 Barn. & Cressw. 439.

The rule is well settled that the guarantee of a promissory note, whose name does not appear on the note, is bound without notice, where the maker of the note was insolvent at its maturity. That his liability continues, unless he can show he has sustained some prejudice by want of notice of a demand on the maker of the note, and non-payment.

In the case before us, there is no pretence that the defendants have sustained any injury from a neglect of the plaintiffs to make a demand on Chester Haring for payment of the balances against him, in the account current; or for the amount paid in discharge of the eight bills of exchange referred to in the declaration.

But if the defendants could prove they had suffered damage by the neglect of the plaintiffs to make the demand and give notice, according to the case of Vanwart v. Woolley, 3 Barn. & Cress. 439, they could only be discharged to the extent of the damage sustained.

As before remarked, Haring died before any of the promissory notes dated 1st May, 1829, became due; and consequently, no demand on him for the payment of these notes could be made. From the facts in the case, it appears that the defendants resided in Port Gibson, the place where Haring lived; and it cannot be doubted that they had knowledge of his death.

From these considerations, it is clear that the district court erred in refusing to give the first instruction asked by the plaintiffs.

The plaintiffs also requested the court to charge that if the jury believed that Chester Haring transferred all his property to Daniel

[Reynolds et al. v. Douglass et al.]

Greenleaf, on the 11th April, 1829, and that Daniel Greenleaf at that time was engaged to pay all the debts of the said firm, and to secure the defendants from their liability on the letter of guaranty; and that Daniel Greenleaf, on 24th December, 1829, by deed of trust to one of the defendants, James S. Douglass, transferred claims to the amount of twenty-eight or nine thousand dollars, to secure the defendants for their liability on said letter of credit; then it is not ne-. cessary for the plaintiffs to prove that the defendants were duly notified of their liability on said letter of credit: which charge the court refused to give.

The facts, hypothetically stated as the basis of this instruction, are such, as if found by the jury, must have had influence on their minds; for they conduce to show that the defendants had received knowledge of their responsibility under the letter of credit, and of the circumstances of Haring. But as the instruction does not necessarily import the insolvency of Haring, which, or his death, can alone excuse the plaintiffs from making a demand on him, and giving notice to the defendants of his failure to pay; the court did not err in declining to give the instruction. The facts supposed in the instruction might be admitted; and yet the insolvency of Haring, at some subsequent period, would not follow as a consequence.

Several instructions were given by the court, at the request of the defendants' counsel, to which the plaintiffs excepted; and we will now consider them.

And first, the court charged the jury, that to entitle the plaintiffs to recover on said letter of credit, they must prove that notice had been given in a reasonable time after said letter of credit had been accepted by them to the defendants, that the same had been accepted. This instruction, being in conformity to the rule formerly laid down by this Court in this case, was properly given. This notice need not be proved to have been given in writing, or in any particular form; but may be inferred by the jury from facts and circumstances which shall warrant such inference.

The court also instructed the jury, that if they believed from the evidence that two of the defendants, Going and Singleton, admitted that the debt sued for was a just debt, and that the said two defendants stated that they would try to arrange the payment thereof, out of the funds or effects that had been assigned by Daniel Greenleaf to James S. Douglass; and that the admission and declaration were made in 1830, and that at said period no notice had been given by

the plaintiffs to the defendants, that said guaranty had been accepted by them; and that said defendants were uninformed at the time of such admission and declaration of such failure to give such notice; that then such admission and declaration do not operate in law a waiver of, and dispense with the necessity of such notice.

This instruction must have been hastily drawn; but we understand it as laying down the principle that a recognition of their obligation to pay, by the defendants, under a supposed liability which did not exist, from the facts of the case, and of which facts they were ignorant; would not be a waiver of the notice. In this view, the instruction was correctly given.

And the court further instructed the jury, that in the absence of evidence of notice given in a reasonable time by the plaintiffs, that said letter of credit had been accepted by them, the mere acknowledgment by the defendants, that the debt sued for is a just debt, does not dispense with the necessity of such notice; but that to dispense with such notice, there must be evidence of an express and unconditional promise by the defendants to pay, made under a full knowledge that such notice had not been given.

This instruction is not founded upon the supposition that the defendants were ignorant of the necessity of a notice to bind them; and this ignorance, therefore, cannot be presumed. The proposition then is, that although the defendants knew that a notice was necessary to bind them, and which had not been given; an acknowledgment of the debt and a promise to pay, which is not express and unconditional, would not dispense with notice. In giving this instruction, we think the court erred. A party to a note entitled to notice, may waive it by a promise to see it paid; or an acknowledgment that it must be paid; or a promise that "he will set the matter to rights;" or by a qualified promise, having knowledge of the laches of the holder. Hopes v. Alder, 6 East, 16; Selw. N. P. 323; Haddock v. Beery, 7 East, 236; Rogers v. Stephens, 2 T. R. 713; Anson v. Baily, Bul. N. P. 276. In the case of Thornton v. Wynn, 1 Wheat. 183, thi~ Court say: an acknowledgment of his liability, by the endorser of a bill or note, and knowledge of his discharge by the laches of the holder, will amount to a waiver of notice.

In their fourth instruction the court say, that a qualified or conditional promise, made by the defendants to pay the debt sued for; which was rejected by the plaintiffs or their agent, is not a waiver of

the necessary notice from the plaintiffs to the defendants, that said letter of credit had been accepted by them.

This instruction is somewhat vague in its language; but if it is to be considered as laying down the rule, that a promise to pay the debt, qualified with a condition which was rejected by the plaintiffs, or their agent; the court were right in saying that it was not a waiver of notice.

In their fifth and last instruction, the court charge the jury that to enable the plaintiffs to recover on said letter of credit, they must prove that a demand of payment had been made of Chester Haring, the principal debtor, of the debt sued for; and in case of non-payment, notice should have been given in a reasonable time, to the defendants; and on failure of such proof, the defendants are in law discharged.

This instruction rests upon the necessity of a personal demand of Haring by the plaintiffs. It has been already shown that this demand was unnecessary in case of Haring's insolvency; the instruction was therefore, on the facts in the case, erroneous. The judgment of the district court must be reversed; and the cause remanded for a venire de novo.

Mr. Justice BALDWIN dissented.


This cause came on to be heard on the transcript of the record from the district court of the United States for the district of Mississippi, and was argued by counsel. On consideration whereof, it is now here adjudged and ordered by this Court, that the judgment of the said district court in this cause be, and the same is hereby reversed and annulled; and that this cause be, and the same is hereby remanded to the said district court, with directions to award a venire facias de novo.