## Lowe & Co. vs. Beckwith.

ERROR TO LOUISVILLE CHANCERY COURT.

1. The terms of a guaranty, "J. B. M. being about to commence re tailing dry goods, I hereby undertake and contract with L. & Co., to become responsible to them for the amount of any bill or bills of merchandize sold by them to said M., agreeably to the terms of sale agreed upon by the parties, without requiring said L. & Co. to prosecute suit against said M. therefor." *Held*, that this guaranty was not a limited guaranty confined to the first bill of merchandize bought by M. of L. & Co., but was a continuing guaranty embracing all the purchases.

2. Each letter of guaranty must be construed by its own terms, and courts are inclined to give to such instruments a liberal and not a restricted construction. (7 *Peters*, 113; 12 *East.*, 227; 2 *Campbell*, 413; 8 *Johnson*, 119.)

3. Where there is a written continuing guaranty it is not necessary that notice should be given of each successive sale or advance. (*7 Peters*, 113; *1 Story*, 22.)

4. Where a guaranty is to pay a debt, or where it is that in case of default of principal debtor the guarantor will perform, then there is no obligation on the creditor to demand payment of the debtor primarily liable. It is the duty of guarantor to ascertain the fact. (*24 Wend.* 35; *2 H. Black*, 613.) Such is this case.

5. Notice of the acceptance of the guaranty is necessary, and an intention to act under it, but no farther obligation devolved upon the creditor. It was the duty of guarantor to inquire for himself of his principal. Non-payment involved a breach of the undertaking and liability to suit.

Judge SIMPSON delivered the opinion of the court.

This action is founded upon a guaranty given by Jacob Beckwith, in favor of J. B. Maynard, by the following instrument of writing:

"LOUISVILLE, April 26th 1849.

"Mr. J. B. Maynard being about to commence the retailing of dry goods at Cannelton, Indiana, and desiring to open a credit with the firm of James Lowe & Co., of the city of Louisville, I hereby undertake and contract with said Lowe & Co. to become responsible to them for the amount of any bill or bills of merchandise sold by them to said Maynard, agreeably to the terms of sale agreed upon by the parties, without requiring said Lowe & Co. to prosecute suit against said Maynard therefor.

*Jacob Beckwith.*"

The plaintiffs averred in their petition, and proved upon the trial, that they accepted the defendant's guaranty on the day it was given, and notified him that they would sell merchandise to Maynard on credit, looking to the guaranty he had given them for indemnity. They also averred and proved, that on the faith of said guaranty they had sold merchandise to Maynard from time to time, between its acceptance and the 19th of May, 1851, inclusive, amounting in the aggregate to several thousand dollars, and that the sum of $443 still remained due to them on account of said sales, which Maynard had failed and refused to pay, although the payment had been demanded of him, of which the defendant had been duly notified.

The defendant admitted the execution of the writing relied on by the plaintiffs, but insisted that according to its terms he was only liable for the first purchases made by Maynard, which had been fully paid for, as appeared by the account of sales and credits, which they exhibited. He also denied that he had been duly notified that Maynard was in default in paying for the goods sold to him by the plaintiffs, or that they looked to the defendants, on his guaranty, for the payment of the balance due them.

It appeared upon the trial that the first bill of merchandise was sold to Maynard by the plaintiffs on the 26th of April, 1849, and amounted to $536; other sales were made to him in each of the following months during the same year, and at various times during the ensuing year, and were continued to be made from time to time until the month of May, 1851. The sales were on a credit of either four or six months. Partial payments were occasionally made by Maynard, whose purchases amounted in the aggregate during the whole time to $4,470 28, and the payments made by him to $4,027 28. His payments on the 11th September, 1849, which had been made at different times, amounted to $536—the exact amount of the first bill of merchandise sold to him by the plaintiffs; but the account, although balanced about the end of each year, had never been closed at any time, and the balance, thus ascertained to be due, paid or settled. This action was commenced in October, 1852, and it did not appear that the defendant was notified until within a few days before its commencement, and after Maynard had become insolvent, that he was in default in paying for the merchandise he had purchased of the plaintiffs, or that they considered the defendant liable for the balance due, although the last sales were made in May, 1851; nor did it appear that the guarantor had been informed, at any time during the period within which the sales were made, that the plaintiffs were continuing to make sales of merchandise to Maynard on the faith of his guaranty, although

he was notified at the time it was given that it was accepted, and would be acted on by them.

Upon this state of case the court instructed the jury to find for the defendant, as in the case of a non-suit, which instruction the court gave, and its correctness is the question now presented for our determination.

This instruction is attempted to be sustained on three distinct grounds—1. The writing upon which the action is based is not a continuing guaranty, unlimited in amount and as to time, but a guaranty only of such goods as plaintiffs should sell Maynard, to aid him in *commencing business*. 2. If the guaranty did not expire with the first sale of $536, still the guarantor is discharged from responsibility, because he was not informed of the subsequent sales, as they were successively made. 3. That no notice of the extent of the sales, or of the amount for which the guarantor was held responsible, was communicated to him within a reasonable time after the expiration of the credit upon which the last sales were made, nor was he informed of the default of Maynard until he had become insolvent, and until a year or more had expired after the debt became due, and by this negligence of the plaintiffs he is discharged from all liability on his guaranty.

1. Neither the language nor the object of the letter of credit in this case will authorize the conclusion that it was intended, and understood by the parties, as a limited guaranty. The aid required was not merely to enable Maynard to "*commence business*," but he being about to commence business desired to open a credit with the plaintiffs, and the guarantor agreed to become responsible for the amount of *any* bill or bills of merchandise sold by them to him. The object contemplated was to enable Maynard to open a credit with the plaintiffs, and to purchase from them, from time to time, any bill or bills of merchandise that he thought necessary to the business in which he was about to embark. This object could only be accomplished by giving to the guaranty a continuing operation. It

1. The terms of a guaranty, "J. B. M. being about to commence retailing dry goods, I hereby undertake and contract with L. & Co. to become responsible to them for the amount of any bill or bills of merchandise sold by them to said M. agreeably to the terms of sale agreed upon by the parties, without requiring said L. & Co. to

LOWE & Co.
*vs.*
BECKWITH.

prosecute suit against said M. therefor." Held, that this guaranty was not a limited guaranty confined to the first bill of merchandise bought by M. of L. & Co., but was a continuing guaranty embracing all the purchases.

2. Each letter of guaranty must be construed by its own terms, and courts are inclined to give such instruments a liberal and not a restricted construction. (7 *Peters*, 113; 12 *East*. 227; 2 *Campbell*, 413; 8 *John*. 119,)

contains no limitation either as to amount or time. The language used fairly admits of the construction, that it was unlimited in duration, and it was no doubt so understood and acted upon by the plaintiffs.

We think the authorities are decidedly in favor of this interpretation. It is true that in these cases, the construction of each instrument must depend on the language used in it, and consequently the decision upon one cannot be an authority for the construction of another, unless the language used in each be exactly similar; but still the manner in which courts have construed such instruments shows that they have been inclined to give them a liberal and not a restricted interpretation, and thus have furnished a rule which gives some aid in their construction.

In the case of *Douglass v. Reynolds, &c.,* 7 *Peters,* 113, the letter of credit was in the following language: " *Gentlemen:* Our friend, Mr. Chester Haring, to assist him in business, may require your aid from time to time, either by acceptance or indorsement of his paper, or advances in cash. In order to save you from harm in so doing, we do hereby bind ourselves, severally and jointly, to be responsible to you at any time, for a sum not exceeding eight thousand dollars, should the said Chester Haring fail to do so." The supreme court of the United States decided that this was a continuing guaranty, for any debt not exceeding the amount specified, which might be incurred under it, although an antecedant debt of the same amount might have been created, on the faith of it, and have been previously paid.

In *Mason v. Prichard,* 12 *East's Rep.* 227, the guarantor agreed "to be responsible for any goods he hath or may supply my brother with, to the amount of one hundred pounds," and the court held that it was a continuing or standing guaranty to the extent of one hundred pounds, which might become due at any time for goods supplied, until the credit was recalled.

In *Merle v. Wells,* 2 *Camp.,* 413; the guaranty was: "I consider myself bound to you for any debt he, (my

brother,) may contract for his business as a jeweller, not exceeding one hundred pounds, after this date." Lord Ellenborough held it to be a continuing guaranty for any debt not exceeding one hundred pounds, which the brother might from time to time contract with the plaintiffs, in the way of his business, and that the guaranty was not confined to one instance, but applied to debts successively renewed. Numerous other cases to the same effect might be adduced, but these are deemed sufficient for the purpose for which they are offered.

The strongest case on the other side that we have been referred to, or have been able to find, is that of *Rogers v. Warner*, 8 *John. Rep.* 119, which was on a guaranty in these words : " If A and B, our sons, wish to take goods of you on credit, we are willing to lend our names as security for any amount they may wish;" and the court held it to be a limited guaranty for a single credit. It may be remarked, in reference to this case, that the language used in the guaranty does not seem to contemplate a continuing credit, or to indicate that the object was to enable the sons of the guarantor to continue to deal with the plaintiff. The guarantor does not state in his letter, as he does in the one upon which this action was brought, that the object was to *open a credit* with the house, nor does he agree to pay any *bill* or *bills* of merchandise that might be sold on the faith of the guaranty, which statement, if it had been made, would naturally imply that a series of transactions between the parties was contemplated ; and in this respect the cases are clearly distinguishable from each other.

We think, therefore, that the construction we have given to the present letter is just and reasonable, and is authorized by the language used, and entirely consistent with the intention and understanding of the parties.

2. As this was a continuing guaranty, providing for a series of transactions, and the guarantor was notified of its acceptance, and the intention of the plaintiffs

3. Where there is a written continuing guaranty, it is not ne-

Lowe & Co.
vs.
Beckwith.

cessary that no-
tice should be
given of each
successive sale
or advance. (7
Peters, 113; 1
Story, 22)

to act under it, he must necessarily have understood that there might be successive sales made, from time to time, according to its terms, and he had no right, therefore, to require that notice should be given him of each sale, as it should be made. In the case of *Douglass v. Reynolds, supra,* 7 *Peters' Rep.*, 113, it was expressly decided, that in the case of a continuing guaranty it was not necessary that every successive transaction under it should be communicated, from time to time, to the guarantor; see also, on the same point, *Wildes v. Savage,* 1 *Story*, 22.

3. But a more important question arises, as to the duty devolving upon the person accepting such a guaranty as this, and giving credit upon it, after the transactions have been completed, and the debt has become due, and default has been made by the person primarily liable. This question we believe, is now presented for the first time in this court. It was decided in the case of *Kincheloe v. Holmes, &c.,* 7 *B. Monroe,* 5, that due notice of the acceptance of a guaranty is necessary, and it was said, that as such notice is sufficient to put the guarantor on his guard, the court was not prepared to decide that the creditors, after giving such notice, would be bound to use greater diligence in demanding payment from the principal, than a man of ordinary prudence would use in his own case. But as the question did not directly arise in that case it was not decided, nor did the court authoritatively determine that the law imposed upon the creditor in such a case, the exercise of any diligence whatever.

The contract of the guarantor in this case consisted, substantially, either in an undertaking to pay the debt in case the principal debtor should fail to do so, or in an undertaking that the debt should be paid by him. The extent of the liability that might arise under the guaranty was indefinite, and in some degree optional with the party who was to act under it. As subsequent events, which were, at least partially, under the control of the plaintiffs, might determine the amount of this liability, a knowledge of which would

4. Where a guaranty is to pay a debt, or where it is that in case of default of principal debtor the guarantor will perform, then there is no obligation on the creditor to demand payment of the debtor primarily liable; it is the duty of guarantor to ascertain the fact. (24 Wend. 35; 2 H. Black, 613.) Such is this case.

be necessary to enable the guarantor to comply with his contract, it might be argued that this information should have been communicated to him before he could be considered in default; but even this cannot be conceded, inasmuch as the amount for which he was responsible did not rest exclusively in the knowledge of the plaintiffs, but was also known to the person in whose favor the guaranty was given, from whom he could have obtained the requisite information. If, however, notice of his liability was necessary before a cause of action would accrue against the defendant, such a notice could be given at any time, and was given in the present case before the action was brought.

It is contended, however, that to make the guarantor responsible for the debt, it is incumbent on the plaintiffs to show that payment of it by the principal was demanded, and notice of his failure to pay given to the defendant within a reasonable time after the debt fell due.

The existence of such an obligation on the part of the person to whom a guaranty is given was recognized in the case of *Douglass v. Reynolds, supra*, and it was decided, that unless such demand was made, and notice thereof given in a reasonable time to the guarantor, he would be wholly discharged from his undertaking. The same case was subsequently brought before the supreme court of the United States, (12 *Peters*, 497,) and, by reference to the opinion then delivered, it will be seen that a modified view of this question was taken, and instead of deciding that a demand and notice of the default constituted an essential ingredient in the case of the plaintiff, in a suit brought on a guaranty, it was held that a failure to do so was mere matter of defense, to be set up and relied upon by the defendant, but would be available as such only to the extent of the injury he had sustained by the omission, and be wholly immaterial where no injury had resulted from it. The doctrine upon this point, in this modified form,

LOWE & Co.
*vs.*
BECKWITH.

5. Notice of the acceptance of the guaranty is necessary, and an intention to act under it, but no farther obligation devolved upon the creditor. It was the duty of guarantor to inquire for himself of his principal. Non-payment involved a breach of the undertaking and liability to suit.

has been recognized and followed by the supreme courts of several of the states. *Howe v. Nichols*, 22 *Maine*, 175; *Smith v. Bainbridge*, 6 *Blackford; Salisbury v. Hale*, 12 *Pickering*, 424.

By other courts this rule has been altogether denied, and it has been held, "that where the undertaking is for the performance of a third party, it is sufficient to establish the existence of a default by the latter, which necessarily involves a breach of the guaranty, and that, as no evidence of demand would be requisite for that purpose were the suit against the principal, the same rule must prevail where it is against the guarantor." *Allen v. Rightmere*, 20 *Johnson*, 365; *Douglass v. Howland*, 24 *Wendell*, 35; *Jones v. Train*, 11 *Vermont*, 444; *Peck v. Barrey*, 13 *Vermont*, 93.

Considering the great diversity of opinion that exists, we feel at liberty to adopt such a rule on this subject as will be just in its operation, and of easy practical application, especially in relation to such guaranties as the one sued upon. The rule laid down in the case of *Douglass v. Reynolds*, and which has been followed in its modified form by the courts of the several states, seems to rest upon a peculiar rule of commercial jurisprudence. Its application is difficult, and uncertain in its results, involving as it does not only the question of "reasonable time," in each case, but also the additional question of the extent of the injury that has been sustained by the guarantor by the failure to make a demand on the principal debtor, and in case of his default to give notice of it. In what manner is the injury to be ascertained? Must it be determined by the condition of the principal debtor, at the time performance is to be made by him, or within a reasonable time thereafter, and if he were then insolvent does the presumption arise that no injury has been sustained by the guarantor, but that, if he were then solvent, a contrary presumption is to be indulged? Or must an additional inquiry be instituted in order to ascertain whether an indemnity

could have been obtained from the principal debtor, had due notice of his default been given? Even if solvent he might have been unwilling to have given an indemnity, and as, in that event, the guarantor could not have been able to secure himself against loss, he would not have sustained any actual damage by the failure to make a demand, and to give notice of the default. This rule, if unexceptionable in every other respect, would certainly be very inconvenient, difficult, and impracticable in its application.

Where the meaning of a guaranty is assumed to be that a third person shall pay a debt, or where it is, that in case of a default on the part of the latter the guarantor will undertake the performance himself, and the guaranty sued upon in this case, imports, undeniably, one or the other of these undertakings, then there does not seem to be, according to the well established principles of the common law, any obligation upon the creditor to demand payment of the debtor primarily liable, but it is the duty of the guarantor, by inquiring of his principal, to ascertain whether payment has been made, and if not to make it himself, in pursuance of his contract to that effect. *Douglass v. Howland*, 24 *Wend.* 35; *Oxley v. Young*, 2 *H. Black.* 613.

On the other hand, where the meaning of a guaranty is, that the debt created under it will be a good debt, or that the party in whose favor it is given will be able to comply with his engagements when they fall due, or that the person to whom the guaranty has been addressed will be safe, in the business sense of the term, in giving the credit referred to, there can be no breach of a collateral undertaking of this nature, until it is shown that the debt created under such a guaranty could not, when it fell due, be collected, the party trusted was insolvent, or the creditor unable, by the use of ordinary diligence, to obtain the payment of the debt.

Upon such a guaranty as the present, notice to the guarantor of its acceptance, and an intention to act

under it in pursuance of its terms, is necessary, because it is in the nature of a proposition, which the party addressed may accept, or reject at his option, and until accepted does not constitute a contract between the parties. But no additional obligation devolves upon the creditor. The guarantor, by applying to the party in whose favor the guaranty has been given, can obtain information as to the extent of the liability incurred under it, and also whether such liability has been discharged or still exists; and if he has undertaken that the debt shall be paid by the debtor when it falls due, its non-payment by him necessarily involves a breach of this undertaking; or if his contract be that he will pay it himself in the event of its non-payment by the debtor, the default of the latter renders his undertaking absolute, and he becomes immediately liable to an action, inasmuch as it is his duty, according to the very terms of his contract, to pay the debt without demand or notice. This will form a safe and sound rule upon the subject, and by its practical operation render a guarantee of this description, when accepted and acted upon, of some value to the party who has dealt upon the faith of it, and trusted to it to secure the payment of his debt.

The result of these views is, that none of the grounds relied upon is sufficient to sustain the correctness of the instruction given to the jury by the court below. Wherefore, the judgment is reversed, and cause remanded for a new trial, and further proceedings consistent with this opinion.

Haggin and Harris for plaintiffs; Ripley for defendant.