DAVID B. TAYLOR, WILLIAM GILLESPIE and JOHN D. TAYLOR, trading in the name, style and firm of DAVID B. TAYLOR & Co. *v.* MARGARETTA McCLUNG, Executrix of John McClung, deceased.

If there be two mercantile firms doing business under different names, but composed of the same members, a letter of guaranty designed for one of the firms cannot be accepted and used by the other; and if the guaranty be prospective in its character to cover future credits, the party tendering it, is entitled to notice of its acceptance, and the party receiving it and for whom it is intended, is bound to give reasonable notice of its acceptance, or the party offering it will not be bound by it.

ACTION of assumpsit and case stated. The following statement of facts in the case were agreed upon and submitted by the counsel for the parties respectively.

On the 13th October, 1854, John McClung gave to William McClung, his brother, then in the grocery business in Wilmington, Delaware, a letter in the following words, viz:

POST OFFICE, WILMINGTON, DEL., Oct. 13, 1854.

MESSRS. TAYLOR & GILLESPIE,

GENTLEMEN:—My brother William is desirous to purchase his goods of you, and has asked me to be security for him. To this I have no objections—I will therefore be accountable for any purchases he may make, with the understanding that he will get his goods on the usual terms and that he pays for them at the time you and him may agree on. If the terms agreed on by you and him should not be fulfilled, it is understood that I am to be notified on the subject.

Yours respectfully,     JOHN McCLUNG.

At the date of the above letter and for some years previously, the plaintiffs in this action carried on the business of Wholesale Grocers at Nos. 7 and 9 South

Water Street, Philadelphia, under the name, style and firm of Taylor, Gillespie & Co.

On the ninth day of September, A. D. 1854, the same persons, the Plaintiffs in this action, commenced the business of Wholesale Grocers in North Water Street, in the same city, and conducted it under the name, style and firm of David B. Taylor & Co. It was conducted under the particular supervision of David B. Taylor. The business of the two establishments was conducted separately; but the plaintiffs held similar interests in each.

On the 9th day of April, A. D. 1853, William McClung having been for several years previously a retail grocer in Wilmington, entered into an agreement with his creditors, whereby they accepted in full satisfaction for their debts, William McClung's promissory notes indorsed by John McClung for 50 per cent. upon the amount of the debts—four notes being given to each creditor in equal amounts, payable at 6, 9, 12 and 18 months. At that date William McClung was indebted to the plaintiffs, for goods purchased of them as the firm of Taylor, Gillespie & Company, to the amount of $1060. Taylor, Gillespie & Co., were among the compounding creditors, and accepted notes given pursuant to the aforesaid arrangement. One of which notes it appears was paid by a check drawn by John McClung, dated Nov. 2d, 1854, for $265, on the Union Bank of Delaware, payable to Taylor & Gillespie, and which is indorsed in the hand writing of one of the plaintiffs, "Taylor, Gillespie & Co."

After the composition above mentioned, made April 9th, 1853, William McClung continued to make purchases upon the usual credit at the house conducted under the firm of "Taylor, Gillespie & Co., until the 19th day of September, A. D. 1854, when the last purchase was made at that house.

4

On the 29th September 1854, he began to contract bills at the house conducted under the firm of David B. Taylor & Co., and continued so to do, until the 28th February, 1855, when his dealings with that house ceased. An account of his dealings with the house of David B. Taylor & Co., showing the dates and amounts of the several bills contracted by him, with the dates and amounts of the credits, is hereto annexed, and made a part of this case, stated. It is further agreed that the said William. McClung was notoriously insolvent at the time of buying said goods of David B. Taylor & Co., and from thence hitherto has been.

These bills were made upon a credit of four months, that being the usual credit upon purchases made by retail grocers of Wilmington, of the wholesale grocers of Philadelphia.

The letter of guaranty signed by John McClung, and above set forth, was given by him to William McClung, who took the same to Philadelphia, and called with it at the house of Taylor, Gillespie & Co. He inquired for David B. Taylor, and on being informed that Mr. Taylor was then at the house of David B. Taylor & Co., he went to that house, and there delivered to Mr. Taylor, the aforesaid letter. Upon receiving it, Mr. Taylor caused it to be filed among the papers of that house, where it afterwards remained until delivered to the attorney in the suit now pending.

At the time of giving the said letter of guaranty, and during the contracting of said bills with the house of David B. Taylor & Co., John McClung was not informed by William McClung of the existence of that house, nor that the members of the firm of Taylor, Gillespie & Co., also composed the firm of David B. Taylor & Co. Whether John McClung during the period referred to. received such information from any other source or not, does not appear.

On the 15th May, 1855, John McClung addressed the following letter, which was received by Messrs. Taylor, Gillespie & Co.; viz:

POST OFFICE, WILMINGTON, DEL., May 15, 1855.
MESSRS. TAYLOR & GILLESPIE:

GENTLEMEN:—I wrote you a letter some time ago requesting you to credit my brother with groceries, provided he complied with the terms agreed on between you and him. The object of this letter is to ascertain that fact; also to know to what amount he is indebted to your firm. Please to let me hear from you by return of mail.

Yours respectfully,
JOHN McCLUNG.

On the 16th of May, 1855, Messrs. Taylor, Gillespie & Co., addressed to John McClung, in reply to the letter last mentioned, the following which was received viz:

PHILADELPHIA, May 16th, 1855.
JOHN McCLUNG ESQ., Wilmington, Del.

DEAR SIR:—Your favor of yesterday's date duly to hand, and in reply we state that Wm. McClung has complied with the terms agreed upon in the purchase of goods from us. He is indebted to us two thousand and seventy-two dollars and fifty-eight cents, ($2072 58.)

There will be due in all, this week, $716; and on the 21st, $154 27; and then not until the early part of next month. If it is not convenient for him to pay the amount falling due this week in full we would be willing to take his note at 60 days, with your indorsement, or will take it without your name on it, provided you will say it is all right. We make these suggestions thinking it might be an accommodation to Mr. Wm. McClung, and we would not suffer, as the money could be had on the notes from our banks. The writer will probably be

in Wilmington on Saturday next, and call on you. In the meantime we subscribe ourselves.

Your obedient servants,

TAYLOR, GILLESPIE & Co.

On the day following, May 17th, 1855, John McClung addressed to Messrs. Taylor, Gillespie & Co., the following note, viz:

Post Office, Wilmington, Del., May 17th, 1855.
Messrs. Taylor, Gillespie & Co.

Gentlemen:—Your letter of the 16th inst., is before me. In reply I have only to state that I think the balance due by William McClung is very large. I have not seen him to-day, but I want an explanation about the matter. I shall not be accountable for any of his transactions with you until I hear something satisfactory.

Yours respectfully,

JOHN McCLUNG.

The account referred to in the case stated and as annexed to it, of the dealings of William McClung with the house of David B. Taylor & Co., commencing on the 29th of September, 1854, and continuing until the 28th of February, 1855, contained numerous items of debit for goods sold to him and of credit for cash paid by him running through that period, leaving, however, a balance due from him to the house on the day last mentioned of $1339 06.

And it was agreed that if, upon this statement of facts, the court should be of opinion that the plaintiffs were entitled to recover the balance of the said account, or any part of it from the defendant, the executrix of the said John McClung since deceased, judgment should be rendered for the plaintiffs for the same, or such sum as the court should adjudge to them; otherwise judgment should be rendered for the defendant.

*Patterson* for the plaintiffs : The first letter which was written by John McClung on the 13th of October, 1854, to Messrs. Taylor & Gillespie, shows in the first place, that it was addressed to some firm in Philadelphia, of which those gentlemen were members, although there never was any firm doing business there in the name of Taylor & Gillespie merely ; and as those gentlemen were members both of the firm of Taylor, Gillespie & Co., and of the firm of David B. Taylor & Co., in that city, and the two firms were composed of the same individual members, the letter will not be construed strictly, but may be fairly considered as addressed to either or both of them under the circumstances ; although in general the rule of law is otherwise, that whoever insists on a letter of guaranty must strictly show that it was addressed to him and not to another, and that he in point of fact, was authorized to trust the bearer on the credit of it ; inasmuch as there was and had been no such firm in that city, as Taylor & Gillespie, nor any commercial house or firm doing business under the name, or style of " Messrs. Taylor & Gillespie, " to whom this letter of guaranty was addressed, but these gentlemen were both members of the two firms mentioned, which were a-like composed of the same individuals, doing business under two different names, as firms merely, and at different points in the city.   The firm of Taylor, Gillespie & Co. was the oldest, and had long been engaged in business in the city under that name, when this letter was written ; and if we were at liberty to solve and settle the question by conjecture, or on the ground of presumption merely, we might reasonably suppose perhaps, that it was intended for that firm, although, it is not in terms addressed to it, but to Messrs. Taylor & Gillespie simply, and so addressed to them individually as it must in fact be considered, there being no firm of that name, it will apply to them as well as members of the firm then re-cently formed and established in business there, of

David B. Taylor & Co., as members of the older firm of
Taylor, Gillespie & Co., the two firms being as I have
before said, composed of the same identical individuals.
But we are not at liberty to solve the question by con-
jecture or presumption merely, for whenever there is
any ambiguity, or uncertainty in the letter of guaranty,
it is to be interpreted most strongly against the party
giving it. *Burge on Suretyship*, 46. *Fell on Mer. Guar.*,
105. It is scarcely necessary to show that this is in its
terms, a continuing guaranty, and will cover all the bills
made with the house of David B. Taylor & Co., from
the date of its receipt by them, until the close of the
account on the 28th of February, 1855. If it be neces-
sary, however, to show that such is its character, I would
refer the court to the authority first mentioned, *page 58*,
and to the latter, *page* 109.

*D. M. Bates* for the defendant : It will be observed
from the case stated, that in 1853 William McClung be-
came insolvent, and that up to that time there was but
one firm in the city of Philadelphia in which these plain-
tiffs were concerned, and that was the firm of Taylor,
Gillespie & Co.; and with that firm William McClung
had been dealing previous to his failure and insolvency.
John McClung had no knowledge that the second house
of David B. Taylor & Co. had been opened, and it was
under these circumstances that he wrote his letter to
Messrs. Taylor & Gillespie of the 13th, of Oct. 1854.
None of the goods for which this suit is brought, were
bought of the firm of Taylor, Gillespie & Co., but were
all bought of the firm of David B. Taylor & Co. And
this being briefly the state of the case, the first question
which I shall submit for the consideration of the court is
whether this collateral undertaking to answer for the
debt of another, which the statute requires to be in writ-
ing, can be construed to apply to any other firm than
one trading under the name and style of Messrs Taylor

& Gillespie, according to the address of the letter of guaranty, although in point of fact there may have been no such firm under that name in existence. *Fell on Mer. Guar.* 71. 4 *Cranch* 224. 2 *Cond. Reps.* 95. But whether this be so or not, I am clear in my conviction that such a guaranty as this addressed to one firm, the firm of Taylor, Gillespie & Co., for instance, could not be used, or treated as addressed to another firm, such as the firm of David B. Taylor & Co. notwithstanding the fact that the members constituting the two firms were identically the same persons ; for whatever might be their individual components and their private rights and liabilities as between themselves, they were known to the public and were dealt with by others only by the name and firm under which they conducted their business.

There was, however, another objection which he had to make to the plaintiff's right to recover in this suit. The letter of the 13th of Oct. 1854 from John Mc Clung to Messers. Taylor & Gillespie, supposing it to be treated as addressed to them either as members of the house of David B Taylor & Co., or as members of the house of Taylor, Gillespie & Co. was but an offer of guaranty by him for his brother William McClung, and was never in contemplation of law accepted by them, so as to make the proposition obligatory on him, because they gave him no notice or instruction, as they should have done, if such was their intention, that they accepted his guaranty and should act upon it. And this principle of law proceeds not so much on the ground that it is essential to perfect and complete the contract of guaranty between them, as upon considerations of commercial policy. *McIvor v. Richardson*, 1 *M. & S.* 557. *Mozley v. Tincler*, 1 *C. M. R.* 691. *Add. on Contr.* 659. *Story on Contr. sec.* 864. In cases of commercial guaranty for future credits, that is to say, when the guaranty is continuing, or prospective in its character, notice, or instruction should be given of its acceptance to the party tendering it, that he may

know that it has been accepted and provide for it. *Lee v. Dick*, 10 *Peters* 482 ; and notice should also be given within a reasonable time to the guarantor, of the goods furnished, or credit given. *Douglass v. Reynolds*. 7 *Peters* 126.

But in this case the plaintiffs themselves did not comply with the terms of the guaranty, because by the terms of the letter proposing it, of the 13th of Oct. 1854, they were required and bound to give John McClung notice of William McClung's first default, or failure to pay his bills when they fell due, which they entirely omitted to do ; and therefore he was discharged. For every condition contained in the guaranty must be strictly complied with by the parties guaranteed, or the guarantor will be discharged from his engagement. *Add. on Contr. 669. Story on Contr. sec. 871.*

*Patterson* in reply : As to the question of notice of the acceptance of the guaranty by the plaintiffs, although it is not distinctly stated in the case submitted to the court, it yet appears from the letter of John McClung addressed to Messrs Taylor & Gillespie on the 15th of May 1855, that he had notice of its acceptance by them, and that they had acted upon it; because as he states in that letter, his object in writing it was to ascertain whether his brother William McClung had complied with the terms agreed on between them, and how much he was then due them. It cannot fail to occur to the court on attentively reading it, that he not only knew that his guaranty had been accepted, but that it also clearly implies, from some information which he had recently received, probably in regard to his brother's affairs, that he was becoming uneasy and concerned about his liability on account of it. For if that was not the case, what reason had he for writing such a letter to them ?

Upon the question as to whom, or which of these firms his first letter may be considered to have been addressed I shall add nothing, as I have already said all that I

think it necessary to say on that subject. But upon the point raised on the other side, that the plaintiffs themselves had not complied with the conditions of the guarranty, I can perceive nothing in the terms of it, to warrant the construction given to it, in order to sustain this point. It does not say he, the guarantor, would be responsible for any purchases William McClung might make of them, with the understanding that he infallibly paid for them, as and when his bills matured, but that he pays for them at the time he and they may agree on : which would certainly not preclude, nor can it be supposed that the guarantor had any such desire, an extension of time beyond the original credit given if they could agree on it.

*By the Court:* From the facts presented, it appears that when the guaranty in question and the letter containing it was written and addressed to Messrs Taylor & Gillespie in Philadelphia by John McClung in the city of Wilmington, on the 13th of Oct. 1854, there were two commercial houses, or firms in the former city engaged in the grocery trade and doing business at different places, under different names and apparently as separate, distinct and independent houses, the one under the name and style of Taylor, Gillespie & Co., and the other under the name and style of David B. Taylor & Co. These two firms, however, though apparently distinct and independent of each other, were composed of the same individual members, proprietors, or owners, David B. Taylor, William Gillespie and John D. Taylor. The guaranty it appears was addressed to Messrs Taylor & Gillespie, which was not the formal business designation, or name of either firm, in the form of a letter from John McClung in Wilmington, and was placed in the hands of his brother William McClung, for whose benefit it was written, to be delivered to its address in Philadelphia, who, according to the case stated, took it first to the house of Taylor, Gillespie & Co., and inquired for

David B. Taylor, and on being informed that he was then at the house of David B. Taylor & Co., without delivering it at that house, or as it would seem, without making any mention of it there, went to the house of David B. Taylor & Co., and there delivered it to Mr. Taylor, who, on receiving it, caused it to be filed among the papers of that house, where it continued to remain until this suit was commenced, and where all the goods furnished upon the faith and credit of it, were afterward supplied to the party who bore it, William McClung. This house, or firm, however, had only been formed and established in business about a month previous to the date of the guaranty, and if William McClung himself was aware of this fact that it had been formed and was composed of the same members with the older firm of Taylor, Gillespie, & Co., previous to his visit to the city to deliver and avail himself of the guarantee, he did not inform his brother John McClung of it, and it does not appear that the latter at that time had any knowledge of its existence, or of the persons who composed it. But he was well aware that there was a mercantile firm in Philadelphia, of which Messrs Taylor & Gillespie were members, and that his brother had previous dealing with such a firm and had been under the necessity, owing to his failure in business, of compounding his debts with it about a year before, and had had himself some business transactions with it on account of his brother, such as endorsing the notes of his brother to them to meet the amount due to them on the composition ; and that firm was the house of Taylor, Gillespie & Co.

It is upon this state of facts that the first question raised in this case has been submitted to the court, *viz* : to which of these houses or firms of " David B. Taylor & Co.," or " Taylor, Gillespie & Co.," was the letter and guaranty of John McClung addressed ; and, under the circumstances, we can have no hesitation in saying that

it must have been to the latter; and if to the latter, that the house of David B. Taylor & Co., the plaintiffs, had no authority to deal with, or trust William McClung for goods on the basis and credit of it, and have no right to recover the demand in suit from the defendant. The fact that the two houses were composed of the same identical members, with the same relative interests or shares, as partners in each, established as they were, at different times and doing business at different points in the city, and under different names, or styles as commercial houses, and, so far as the public was concerned, apparently on separate and distinct grounds, each for itself, could not entitle them to consider and treat a guaranty, or proposition of guaranty addressed to one house, as alike addressed to both, or indifferently to either; or that either one of the firms, or any but the firm to which it was addressed, or for which it was in point of fact designed, could act upon it, as a valid and binding guaranty. For the identity of members will not constitute an identity of firms under such circumstances, if it can indeed, under any circumstances where they are doing business as separate and distinct houses in different places, even under the same name; because, a commercial house consists of something more than its individual members, or proprietors merely. Its stock in trade, stand, or place of business, books, bills, notes, accounts and papers, as well as many other appliances peculiar to every such house, and in which no other firm, as a firm, can have any property, or interest as a proprietor, are all essential matters, which enter into the constitution and composition of a mercantile firm, or co-partnership, as well as members or owners; and it would be productive of the greatest confusion, injustice and embarrassment in all legal and judicial proceedings, if they were to be considered and treated as in effect, and substantially one and the same house, because the respective members of them happen to be the same;

It is for this reason therefore, that every firm must sue and be sued by and in its own name as a firm, for a partnership debt, or a debt contracted with it as a firm; and that one firm cannot, in its own name as a firm, sue for and recover a debt contracted with another firm, in the name of that firm, even though composed of the same members. In all these respects, two different houses doing business under two different commercial names as firms, though constituted of the same members having the same interest in each, are in contemplation of law, as separate and distinct from each other as two persons; and one cannot act, or sue upon a guaranty intended for or given to another, any more than it can sue for a debt, or an account contracted with the other; for if the guaranty be accepted by the party to whom it is offered, or for whom it is intended by the guarantor, it is as much a matter of contract between the parties to it in the one case, as in the other.

And here we might dismiss the case, as the view which we have taken of this question, must decide it. But there was another point presented and discussed in the argument, on which we think it proper to make some remarks before we dispose of it. Assuming, for the sake of argument, that the letter of guaranty was addressed, or might, under the circumstances, be consid-ered as having been addressed, to the firm of David B. Taylor & Co., instead of the firm of Taylor, Gil!·spie & Co., the question to which we next refer is, was the guaranty legally accepted by that firm, so as to bind the party offering it ? It is not pretended that any formal notice was expressly given to John McClung of its receipt and acceptance by either of the firms, nor does it appear from the case stated, that his brother, William McClung had even informed him of its acceptance by the new house of Daved B. Taylor & Co., and that he was making his bills at that house instead of the other, on the credit of it ; for we do not agree with the counsel for the plaint-

iffs that there is any thing in his letter, of May 15th, 1855, to Messrs. "Taylor & Gillespie", to warrant the inference which he has drawn from it, that he certainly knew by that time, that his guaranty had been accepted by Messrs. David B. Taylor & Co.   But even if such were the case, it would not have been sufficient to bind the party tendering it; for it is a well established principle of law, that a party tendering a guaranty of this nature, for future and prospective credits, or advances, is entitled to reasonable notice of its acceptance, and that it will be duly credited, and acted upon by the parties to whom it is addressed, or he will not be bound by it.   On this point there is a strong case reported in 12 *Peters* 497, not cited in the argument.   The guaranty was by letter, addressed to a third person in the following terms : " Sir, On this sheet yon have the list of articles wanted for Miss Betsey Miller's millinery establishment, which you were so good as to offer to purchase for her.   I will be security for the payment either to you, or to the merchants in New York of whom you may purchase them, and you may leave this in their hands, or otherwise, as may be proper.   I hope to your favor and view may be added all possible favor by the merchants to the young lady, in quality and prices of goods, as I have no doubt she merits as much by her knowledge of her business, industry and pure conduct and principles, as any whatever".   The person to whom the letter was addressed, purchased the goods mentioned of the plaintiffs, who were merchants in New York and left the letter with them.   There was no further proof than what might be implied from this fact, that the writer of it, the guarantor, had notice that the plaintiffs had accepted the guaranty, and acted upon it.   On the argument it was conceded by the counsel for the plaintiffs that when the engagement of the guarantor is prospective, and is intended to apply to future transactions, the guarantor is entitled to notice, and has a

right to know whether it is accepted, and if the person to whom it is addressed, intends to give credit upon the footing of it, or not. But he endeavored to distinguish the case from those in which this principle had been recognized and established, on the ground that the guaranty in question was not prospective, nor intended to cover any other goods than those set forth in the memorandum accompanying the guaranty ; and that as soon as those goods were furnished the authority of the guaranty was exhausted and no further credit was warranted by it, and therefore no further notice of its acceptance to the defendant was necessary than that which was in the knowledge of his agent who delivered his letter to the plaintiffs. But in announcing the opinion of the court, JUSTICE STORY, who delivered it, said ; the question presented is " whether upon a letter of guaranty, addressed to a particular person, or to persons generally, for a future credit to be given to the party in whose favor the guaranty is drawn, notice is necessary to be given to the guarantor that the person giving the credit, has accepted or acted upon the guaranty, and given the credit upon the faith of it. We are all of opinion that it is necessary ; and that this is not now an open question in this court after the decisions which have been made in *Russel v. Clark,* 7 *Cranch* 69. *Edmonson v. Drake,* 5 *Peters* 624, *Douglass v. Reynolds,* 7 *Peters* 113, *Lee v. Dick,* 10 *Peters* 482, *and Reynolds et al, v. Douglass,* 12 *Peters* 497. It is in itself a reasonable rule, enabling the guarantor to know the nature and extent of his liability; to exercise due vigilance in guarding himself against losses which might otherwise be unknown to him, and to avail himself of the appropriate means in law and equity, to compel the other parties to discharge him from future responsibility. If, therefore, the question were entirely new, we should not be disposed to hold a different doctrine, and the English decisions, we think, are in entire

conformity with our own." *Adams et al., v. Jones,* 12 *Peters* 213. To enable a party claiming under a guaranty, to recover from the guarantor by a letter of credit, he must prove that notice of its acceptance had been given in a reasonable time after the letter of credit had been accepted. The notice need not be proved to have been given in writing, or in any particular form, but may be inferred by the jury from facts and circumstances which shall warrant such inference. *Reynolds et al. v. Douglass,* 12 *Peters* 497.

These cases clearly ·show that the party tendering a guaranty for future and prospective credits is entitled to notice of its acceptance, and the party receiving it is bound to give it within a reasonable time after acceptance, or the party offering it will not be bound by it. But as there is nothing in the case stated, as we have before intimated, to warrant the court in drawing the inference, that John McClung in this case had notice of the acceptance of the gauranty, even if it had been intended for the house of David B. Taylor & Co., our opinion is against the right of the plaintiffs to recover on this as well as on the other point. Judgment must therefore be entered for the defendant.