CENTRAL SAVINGS BANK, Respondent, *v.* EUGENE SHINE, Appellant.

1. *Practice, civil — Verdict — Conclusive on questions of fact.* — On questions of fact in law cases, where the evidence is conflicting, the verdict of the trial court is conclusive. .

2. *Letter of credit — Loan, notice of — Approval and acceptance — Ratification, effect of.* — If, after a loan is made by a bank on a letter of credit, the writer has information thereof, and with full knowledge approves of and assents to the loan, such approval and assent amount to a ratification, and he will be bound thereby.

3. *Guaranty, offer of — Notice of acceptance necessary to bind guarantor — What notice reasonable as to time a question for the jury.* — Where an offer or proposal is made by letter to guaranty the payment of future advances to . be made to the principal of the guarantor, there should be a distinct notice of acceptance, in order that the guarantor may know distinctly his liability, and may have the means of arranging his relations with his principal, and may take from him security or indemnity

In an action against the guarantor, a general averment of notice of acceptance by plaintiff is sufficient, and the question whether it be reasonable in point of time, under all the circumstances of the case, is one of evidence, which should be left to the jury under proper instructions from the court.

*Appeal from St. Louis Circuit Court.*

The first, second and third instructions given by the court for the plaintiff were as follows :

"1. That the contract set out in the plaintiff's petition is an absolute undertaking on the part of defendant to pay the plaintiff $15,000 if the plaintiff would loan that sum to O'Neil & Co.; and if plaintiff did loan said sum to O'Neil & Co. in pursuance of said contract, plaintiff is entitled to recover.

"2. If the court finds that the paper set out in the petition was received by the plaintiff about the 30th of March, 1868, and

plaintiff accepted the proposition therein contained, and on or about the day aforesaid loaned to O'Neil $10,000, and was then ready and willing to loan said firm the balance called for in the paper, and so notified said firm; and that plaintiff afterward, on or about the 9th of April, 1868, when required by O'Neil & Co., did loan them $5,000, the balance called for in said paper; and afterward, to-wit: about the 20th of May, 1868, defendant examined the books of plaintiff, and from said books and other information became aware that plaintiff had loaned said money to said firm, and that with such knowledge he approved of what plaintiff had done in the premises; and that, after the money was loaned to O'Neil & Co. as aforesaid, they became insolvent and failed to pay said money to plaintiff, and that defendant became aware of the insolvency of said firm as soon as plaintiff—then the plaintiff is entitled to recover the sum or sums so loaned to said firm, with legal interest, less the credit stated in the petition.

"3. The court declares the law to be that the written instrument set out in the petition and read in evidence constitutes an undertaking on the part of the defendant to pay plaintiff $15,000 if plaintiff would loan to O'Neil & Co. that sum; and that if plaintiff did, in pursuance of said undertaking and on the faith thereof, loan to O'Neil & Co. the said sum, then defendant became and is liable to plaintiff therefor, less the payment made thereon."

*T. T. Gantt*, for appellant.

I. The writing dated March 13, 1868, is a proposa to guaranty the plaintiff in a certain event, and upon the face of it the writer declares his uncertainty whether his proposal will be accepted. The plaintiff was bound in accepting it to give the guarantor reasonable notice of its acceptance, and in the absence of such notice the guarantor is discharged. (Douglass v. Reynolds, 7 Pet. 113; 10 How. 461; Smith v. Anthony, 5 Mo. 504; Childs v. Rankins, 9 Mo. 673; Craft v. Isham, 13 Conn. 28; New Haven County Bank v. Mitchell, 15 Conn. 217; Lowrie v. Adams, 22 Verm. 168; Mussey v. Raynor, 22 Pick. 223; Thomas v. Davis, 14 Pick. 353; 1 Mason, 340; Norton v. Eastman, 4 Greenl. 521; Tuckerman v. French, 7 Greenl. 115;

Babcock v. Bryant, 12 Pick. 133.) The list might be much prolonged, but it is deemed merely useless to do this.

II. The guaranty is to be for an advance, by the plaintiff, of additional cash, over and above what has been already advanced by the plaintiff to O'Neil & Co., and this cannot be extended to cover the renewal of an advance already made to O'Neil & Co. by the plaintiff.

III. The proposal is to guaranty this advance to O'Neil & Co., and this cannot be construed to cover an advance to O'Neil alone, no matter how intended by the plaintiff and O'Neil. (Farmers' Bank v. Bayless, 35 Mo. 428 ; Allison v. Rutledge, 5 Yerg. 193 ; Grant v. Naylor, 4 Cranch, 224 ; Bellairs v. Ebsworth, 5 Campb. 52 ; Weston v. Barton, 4 Taunt. 673 ; Simson v. Cooke, 8 Moore, 588 ; Ripling v. Turner, 5 B. & Ald. 261 ; Russell v. Perkins, 1 Mason, 368.)

IV. The failure to notify defendant of the non-payment of the loan at maturity in June, 1868, and the renewal of the loan (O'Neil being then solvent) discharged the defendant. (Reynolds v. Douglass, 12 Pet. 497; Louisville Manuf. Co. v. Welch, 10 How. 491.)

V. The renewal of the loan on the 1st and 11th of June, 1868, without Shine's consent, discharged him.

VI. The failure to give to Shine the information requested on the 24th of June, 1868, and the direction of the plaintiff to its cashier not to answer Shine's letter of that date, estops the bank to claim that the facts were otherwise than as supposed in that letter.

*S. Reber*, for appellant.

It is settled by the weight of authority that where the debt to be guarantied is ascertained and agreed on by previous negotia- tions between the parties, and the guaranty is given of such a debt, no notice of the acceptance of the guaranty is necessary, because the guarantor has such notice at the time he gives his guaranty. But where the proposal is to guaranty a debt to be created in the future, and which is not already agreed on between the parties, the proposal must be accepted by the guarantee by

notice to the guarantor to that effect. Until this is done there is no bargain struck — no *aggregatio mentium*. It is illusory to say that the guarantee accepts the undertaking of the guarantor by simply giving the credit for which the guarantor proposed to become responsible. The doctrine that notice of the acceptance of the guaranty is necessary in the cases above mentioned is adopted as the law of this State in the cases cited from 5 Mo. and 9 Mo. In the latter case Judge Scott dissents, but on the ground that the defendant's engagement was an original and not a collateral one. (See 7 Mo. 682.)

It is just as important to the guarantor to have notice of acceptance as it is for the drawer of a bill to have notice of its non-payment.

The cases in the United States reports are all in conformity with the Missouri cases. (2 Am. Lead. Cas. 79.) As illustrating the difference between a guaranty and a proposal to guaranty, see Howe v. Nichols, 22 Me. 175 ; Eaton v. Shaw *et al.*, 2 H. & Gill, 22 ; Allen v. Pike, 3 Cush. 243 ; Walker v. Forbes, 25 Ala. 139 ; Fay v. Hall, *id.* 709 ; McDougal v. Calef, 34 N. H. 534 ; Beebe v. Dudley, 26 N. H. 249.

*Sharp & Broadhead*, and *J. R. Lackland*, for respondent.

I. The contract of appellant is a primary, direct promise to the bank that he will be responsible to it for the $15,000 — not a conditional or collateral one, nor a guaranty for payment to be made by O'Neil & Co., or any third person. O'Neil & Co. did not apply to respondent for the loan of the money ; they did not agree to repay the money. No contract was made or existed between the bank and O'Neil & Co., consequently appellant's undertaking was not and could not be collateral or secondary, for there was no agreement to which it could be so.

The only true meaning and construction of appellant's contract is that he primarily applied for the loan of the money to be made to O'Neil & Co. ; he promised, not that O'Neil & Co. should pay it and he would be responsible that they should, but that he himself would pay it to the bank. The only contract made with the bank was appellant's contract, that if it would

loan the money he would pay the amount to it. To secure such repayment by him he pledged as collateral security for his performance a note held by him on Walker for a like amount. There is no provision or requirement that O'Neil & Co. should agree to pay or become liable for the money to the bank, or become a principal debtor, or for appellant to be secondarily or collaterally liable for them, or guarantor for payment by them. When this paper was delivered to and received by the bank, and the money loaned thereon, appellant became at once directly bound as original contractor or debtor, and no notice was necessary to complete his liability. (Allen v. Rightmore, 2 Johns. 364; Ridgeway v. Day, 13 Penn. 208; 37 Mo. 424; 26 Me. 358; 16 Me. 257; 37 N. H. 539; 6 Conn. 81; Mason v. Pritchard, 2 Campb. 436.)

II. In the cases in which undertakings have been held to be guaranties, when, upon a fair construction of the terms of the undertaking, the party bound himself to be responsible for goods or property sold to another, and not a collateral undertaking for performance by another of the terms of some agreement of such other person, it is held to be an absolute guaranty; and when acted upon according to its terms, the liability of the guarantor is fixed. No notice of acceptance, or that it has been acted upon, or will be acted upon, or of default of principal debtor, is necessary. (Powers v. Bumcratz, 12 Ohio St. 273; 8 Gray, 211; 36 Verm. 617; 15 Ind. 45; 9 Wis. 316; 28 Verm. 160, 175; 26 Barb. 63; 1 Sneed, Tenn., 158; Hill & Denio, 237; 3 Sneed, 87; 1 Wms., Verm., 482; 2 Gilch., Mich., 504; 3 Comst., N. Y., 203; Sanders, 563; 19 Wend. 557; 26 Wend. 425; 2 Barb. 51; 6 Conn. 315; 12 Sm. & M. 395; 7 Ired. 384; 7 Blackf. 562; 20 Johns. 367; 7 Conn. 523; 4 Day, 444; 7 Greenl. 186; 11 Verm. 444; 3 Verm. 301; 1 Miles, 276; 1 McMullen, 76; 15 Conn. 406; 6 Hill, 543; 24 Wend. 82.)

III. Even if the undertaking sued on could be construed as strictly and technically a guaranty for O'Neil & Co., and for payment by them, and that notice of its being acted upon and of the money loaned, and notice of default of payment by O'Neil & Co., should have been given to appellant, yet the averments in the

petition and the evidence on those points are amply sufficient. After averring the facts, it is alleged that appellant had due notice of them; and the evidence shows that he was in St. Louis in two months after the money was loaned, and well knew and approved all that had been done.

In cases of undertakings of guaranty, where notice has been held to be necessary, it is held that it need not be immediate, but that if notice or information is received by the guarantor in reasonable time it is sufficient, and the notice need not be formal or proven by direct evidence. If information is acquired by the guarantor, this is sufficient, and it may be inferred from circumstances; and the notice or information is within a reasonable time if it be before any actual damage (by reason of the want of it) has come to the guarantor. (15 Ind. 144; 34 N. H. 534; 28 Verm. 160; 1 Wms., Verm., 482; 10 How., U. S., 461; 2 Me. 79; 9 Mo. 673; 11 Verm. 444; 4 Humph. 303; 1 Sto. 22.)

The two cases passed upon by the courts of this State (5 Mo. 504 and 9 Mo. 673) have little or no weight. They were poorly considered, and are in apparent conflict with the great weight of authorities. They are also both cases of secondary or collateral contracts — secondary and collateral to the primary contracts of the original contracting parties — guaranties for performance by the principal contracting parties of certain agreed terms of their contracts—technical guaranties; while the case before us presents the original contract of appellant, for himself — for no one else; for no one else had made a contract for which he could become guarantor. He, and he alone, was principal and the only contracting party.

WAGNER, Judge, delivered the opinion of the court.

This cause was tried on a second amended petition, in which the plaintiff states as its cause of action that Peter O'Neil and Francis Doyle were partners under the name of O'Neil & Co., and that on the 13th of March, 1868, Joseph O'Neil being president of the plaintiff, the defendant wrote to him on that day from Ireland as follows: "Hearing from P. O'Neil and Mr. Doyle that they could use advantageously some additional cash over

and above the amount already had of your bank, and being desirous to promote their interests and enable them to carry on their business efficiently, I will thank you to submit to your board that if they will lend O'Neil & Co. $15,000 I shall hold myself responsible for that amount, and will leave with you as collateral security the note and mortgage of Isaac Walker, which is at present in your vault, for a like sum (say $15,000). If the Central cannot conveniently make this advance, I will feel obliged to assist them in procuring it elsewhere." The petition also states that this paper was delivered to the said president on the 30th day of March, 1868, by him on the same day laid before the board of directors and by them accepted; that by this writing defendant promised the plaintiff that if it would loan to O'Neil & Co. $15,000 he (defendant) would be responsible for that amount; that thereupon, " on the faith thereof, plaintiff lent to O'Neil & Co., in the ordinary and usual manner of such loans, $15,000, of which defendant afterward had due notice; that of this sum $10,000 was lent on the 30th of March, 1868, for sixty days, and the balance on the 9th of April, 1868, for sixty days; of all of which the defendant afterward had full knowledge, and agreed and assented thereto and approved thereof."

The answer admitted the writing set out in the plaintiff's petition, but denied that the plaintiff at any time gave to the defendant notice of the acceptance of the proposal, or that the proposal was accepted; denied, further, that plaintiff made to O'Neil & Doyle any loans or advances on the faith of the writing as stated and set forth, or that he had any notice of them from any source prior to the commencement of this suit, or that he at any time assented to or approved the same.

To this answer there was a replication, which simply denied that defendant made a proposal in writing to guaranty plaintiff in case it would make any loan to O'Neil & Doyle, and that the only writing or contract made by the defendant relating to the loan, was the agreement mentioned in the petition. The cause was tried by the court sitting as a jury, and the verdict and judgment were rendered for the plaintiff.

Whether the loans were made and in what manner were ques-

tions of fact, and the verdict and finding of the court below in that regard is conclusive here. So far as refusing instructions asked for the defendant is concerned, we see no ground for interference. Those already given at his instance covered the material points in the case and were sufficiently favorable.

The second instruction given for the plaintiff is, I think, unobjectionable. If, after the loan was made, defendant had information thereof, and with full knowledge approved of what the plaintiff had done in the premises and assented thereto, this would amount to a ratification, and he would be bound thereby. But under the pleading the main issue presented is as to the real character of the writing addressed by the defendant to the plaintiff. The view of the plaintiff is that it is an original, primary undertaking—an absolute promise, binding the defendant without any notice of acceptance. On the other hand, the defendant contends that it is nothing more than a guaranty, and that to impose any obligation on the defendant, notice of acceptance was indispensably necessary.

The first and third instructions given by the court for the plaintiff proceed upon the theory that the writing was an original promise, and so treat it, and declare that if the plaintiff loaned the sum to O'Neil & Co. in pursuance of the writing, then it was entitled to recover. The instructions wholly dispense with any notice of acceptance to be given to the defendant, and hold the writing to be a binding contract as soon as acted upon by the plaintiff, whether the defendant was ever apprised of that fact or not.

There is a marked difference between an overture or proposition to guaranty and a simple contract of suretyship. The one is a contingent liability, the other is an actual undertaking. The surety is bound with his principal as an original promisor; he is a joint debtor with his principal from the very inception of the agreement, and his obligation continues until full payment is made. An indulgence by the creditor will not absolve him, for his liability is absolute, and he is bound to know of his principal's default. But the contract of a guarantor is his separate, independent contract. It is not a joint engagement with the

principal to do a thing. It is in the nature of a warranty that some one else shall do a certain thing or act, and the guarantor is responsible only for the default or failure of his principal. A surety being a joint contractor, may be sued with his principal; a guarantor cannot be.

The great weight of authorities, including the decisions in this State, establish the proposition that, as the original contract with the principal is not the contract of the guarantor, the creditor is bound to give him notice if he intends to hold him responsible. The counsel for the plaintiff have cited cases to show that no notice is necessary, and that the guarantor is bound whenever the creditor receives his proposition and acts on it; but the law of this State is settled otherwise. That the paper addressed by the defendant to the plaintiff was simply an overture or proposition, instead of a direct or absolute undertaking, seems to be sufficiently plain. He says, in substance, that hearing that O'Neil & Co. could use some additional cash over and above the amount already had of the plaintiff, he would thank the president of the plaintiff to submit to the board if they would lend the firm $15,000, and he would hold himself responsible for that amount; but if the plaintiff could not conveniently make the advance, he should feel obliged to procure it elsewhere. This was nothing but the submission of a proposition. The defendant did not know whether it would be accepted or not, and until he was notified of its acceptance he obviously could not tell anything about the nature or certainty of his liability. This, it appears to me, is the fair and correct interpretation of the instrument; and the decisions in this State and in other courts, which we have followed, have so construed similar writings, and held that notice of acceptance was necessary to fix the responsibility of the guarantor.

In the case of Smith v. Anthony, 5 Mo. 504, Smith addressed to Anthony the following letter:

"Col. Wm. Anthony: Dear Sir—Wm. Mitchell, Jr., will probably call on you to purchase your horse; and should you conclude to sell, you can do so. Take his note, and I will be responsible for the payment on his return.

"Respectfully,        Zenas Smith."

Central Savings Bank v. Shine.

Anthony sold Mitchell his horse, and Mitchell took him to Alabama, and returned; and failing to make payment, suit was brought against Smith, and it was held that before Anthony could recover he must prove that he gave Smith notice that he had sold on the faith of the guaranty, and that he looked to him for payment.

In Rankin v. Childs, 9 Mo. 665, McCourtney applied to Rankin to purchase lumber for building a ferry-boat. Rankin refused to credit him without security. McCourtney mentioned the name of Childs as security, and he was accepted as sufficient. A few days after McCourtney presented a bill of the lumber in Childs' handwriting, at the foot of which was written:

"Messrs. Rankin will furnish the above bill as soon possible, and I will order what more I may want for my boat in a short time.                    JAMES McCOURTNEY."

"I hereby guaranty the payment of the above bill. January 29, 1842.                    WM. CHILDS."

It was in evidence that the lumber was delivered, and that, while the boat was being built, Childs was frequently present as a visitor but took no part in the matter. In an action against Childs, it was held that his contract was not a direct promise but a mere guaranty, and to hold him liable, notice should have been given of the acceptance of the guaranty.

In Douglass v. Reynolds, 7 Pet. 113, a letter was addressed by the defendant to the plaintiff in the following words: "Gentlemen — Our friend, Mr. Chester Harring, to assist him in business, may require your aid from time to time, either by acceptance, or indorsement of his paper, or advances in cash. In order to save you from harm in so doing, we do bind ourselves severally and jointly to be responsible to you at any time for a sum not exceeding $8,000, should the said Chester Harring fail to do so." It was held that this was a guaranty, and that to hold the guarantors liable, they were entitled to notice of its acceptance.

This is now and has long been the firmly established doctrine in the Supreme Court of the United States. (Douglass v. Reynolds, supra; 12 Pet. 497; Russell v. Clark, 7 Cranch, 69; Edmondson v. Drake, 5 Pet. 624; Lee v. Dick, 10 Pet. 482.)

In Maine the following instrument was construed in the same way: "Messrs. W. & G. Tuckerman: Gentlemen—For the bill of goods which Mr. Charles B. Prescott bought of you on the 6th inst., I hold myself responsible to you for payment agreeably to the contract made with him; and I will hold myself responsible for any goods which you may sell to him, provided the amount does not exceed $500." This was decided to be a guaranty, and as the plaintiff had not given notice of its acceptance in the first instance, nor of the delivery of the goods under it subsequently, he could not succeed in his action. (Tuckerman v. French, 7 Me. 445.) A similar decision was made in the case of Bradley v. Cary, 8 Me. 214.

The question was decided in the same way, on essentially the same state of facts, in Craft v. Isham, 13 Conn. 28; Oaks v. Miller, 13 Verm. 116; 16 Verm. 63; Lowry v. Adams, 22 Verm. 166; Babcock v. Bryant, 12 Pick. 133; Mussey v. Raynor, 22 Pick. 233. In all these cases the courts hold that notice of acceptance is an essential element, without which a guaranty of future advances cannot rise higher than a mere proposal or offer, nor ascend to the rank of a binding agreement.

Mr. Parsons sums up the rule, as deduced and extracted from the weight of authority, that where there is a guaranty for future operations, perhaps for one of uncertain amount, and offered by letter, there should then be a distinct notice of acceptance, and also a notice of the amount advanced upon the guaranty, unless that amount be the same that is specified in the guaranty itself. (2 Pars. Cont., 5th ed., 13.)

The reason which underlies the principle of notice is that the guarantor may know distinctly his liability, and have the means of arranging his relations with the party in whose favor the guaranty is given, and take from him security or indemnity. Whilst New York and some few of the other States have decided that notice of acceptance is unnecessary to bind the guarantor, still the contrary doctrine is ruled in our own courts and the national courts, and a large majority of the courts of other States.

Messrs. Hare & Wallace, in their edition of Leading Cases, say that notwithstanding the objections which may be made to the

doctrine which makes notice essential to complete the obligation of prospective and contingent guaranties, it has been transplanted from the courts of the United States into many of the State tribunals, and is now well-settled law in New England, Pennsylvania, Ohio, Missouri, Kentucky, Alabama, and some other parts of the Union.　(2 Am. Lead. Cas., 4th ed., 73.)

It was formerly held that notice of an intention to accept and act under the guaranty was an obligation of the commercial rather than the common law, and that it must be given immediately, or at all events without unnecessary delay.　But the cases of Douglass v. Reynolds, *supra*, and The Louisville Manuf. Co. v. Welch, 10 How. 461, are limited to a declaration that notice must be given within a seasonable or reasonable time after what is called acceptance.　And the latter decision establishes not only that a reasonable notice of what is done under the guaranty will be sufficient, but also that no delay in giving it will be a bar to the action unless it is productive of some injury to the guarantor.

. The better opinion, I am inclined to think, is that a general averment of notice is sufficient; and the question whether it be reasonable under all the circumstances of the case is one of evidence, which should be left to the jury under proper instructions from the court.　(Lawrence v. McCalmont, 2 How. 426; Louisville Manuf. Co. v. Welch, *supra*; Williams v. Stanton, 5 Sm. & M. 347; Walker v. Forbes, 25 Ala. 139.)

For the error of the court in giving the first and third instructions for the plaintiff, the judgment must be reversed and the cause remanded.　The other judges concur.

Shine having died since the submission of this cause, the clerk will enter up the judgment as of the last term *nunc pro tunc.*.