MARTHA MEAD, Respondent, *v.* LUCIAN MEAD, Appellant.

### February 28, 1876.

1. A decree of divorce, granted upon a petition setting forth several causes for divorce, will not, if one of such causes be satisfactorily established, be disturbed because the others were insufficiently sustained by the proofs.

2. Since the revision of 1855 it has not been necessary, in any case, for the Circuit Court, upon trying a cause without a jury, to set out in writing its finding of the facts upon which the judgment is rendered.

3. The statute requiring divorce causes to be tried by the court is not unconstitutional, as impairing the right of trial by jury.

4. Judgment of affirmance entered as of the day on which the cause was submitted, by reason of the death of a party between that day and the delivery of the opinion.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Henry H. Denison* and *R. H. Musser*, for appellant, cited : Gillinswaters *v.* Gillinswaters, 28 Mo. 61 ;. Twyman *v.* Twyman, 27 Mo. 383 ; Messenger *v.* Messenger, 56 Mo. 329 ; Hoffman *v.* Hoffman, 43 Mo. 547 ; Kempff *v.* Kempff, 34 Mo. 211 ; Bowers *v.* Bowers, 19 Mo. ,352 ; Harper *v.* Harper, 29 Mo. 301 ; Hooper *v.* Hooper, 19 Mo. 355 ; Doyle *v.* Doyle, 26 Mo. 545 ; Cheatham *v.* Cheatham, 10 Mo. 296 ; Anderson *v.* Bank of State of Missouri, 1 Mo. 244 ; Kenly *v.* Kenly, 2 How. (Miss.) 751 ; Fulton *v.* Fulton, 7 Geo. (Miss.) 154 ; Holmes *v.* Holmes, Walk. (Miss.) 474 ; Walker *v.* Walker, 11 Geo. (Miss.) 154 ; Wag. Stat., sec. 2, p. 533 ; Wag. Stat., sec. 8, p. 535 ; Wag. Stat., sec. 9, p. 535 ; Bill of Rights and Const., Art. 17, Wag. Stat. 36 ; Practice Act, Wag. Stat. 1040 ; Stat. of Miss., sec. 6, 1824.

*Martin & Lackland*, for respondent, cited : Hooper *v.* Hooper, 19 Mo. 256 ; May *v.* May, 62 Penn. 206 ; Ross *v.* Ross, 9 Ark. 507 ; Baily *v.* Baily, 97 Mass. 375 ; Briggs *v.* Briggs, 20 Mich. 34 ; 1 Bishop on Mar. & Div. 55, 813 ; 2 Bishop on Mar. & Div. 657, 658 ; Brown *v.* Brown, 1 P. & D. 46 ; Bowers *v.* Bowers, 19 Mo. 351 ; Camp *v.* Camp, 18 Texas, 528 ; Mahone *v.* Mahone, 15 Cal. ; Robbins *v.* Robbins, 100 Mass. 150.

GANTT, P. J., delivered the opinion of the court.

The petition was filed to the June term, 1872. It alleged a marriage in 1853 ; that plaintiff was for twelve years a true wife, and in all things fulfilled her marriage vows ; that for six years past defendant has offered to her such indignities as to render her condition in life intolerable ; that said indignities consisted of the following particulars :

1. Violent, abusive, and degrading reflections upon plaintiff, as that plaintiff was only fit for a gambler's wife ; that she wanted another husband ; that plaintiff and her sisters were hyenas.

2. Violent, abusive, and degrading reflections on the

character and integrity of plaintiff's brothers, sisters, and kindred, as that they were barbarous; that the children of plaintiff should die before they should be raised with such barbarous people; that they were thieves; that they were false and perjured; that they were dishonest, greedy, and plotting to cheat and defraud plaintiff out of her estate. This has been continual for six years past. By this means plaintiff has been deprived of the society of her family.

3. Contemptuous and contumelious refusals to give plaintiff any information in regard to her property, and declaring that the same belonged to him.

4. Idle, lazy, and shiftless conduct, loafing in the streets and bar-rooms for six years, until his name and reputation have become an indelible indignity, disgrace, and reproach to his wife and family.

5. That he has been guilty of such barbarous conduct towards her as to endanger her life, in this, that in March and April, 1872, defendant made and uttered violent and mysterious threats to the effect that some one would have to die before this matter could be settled—referring to the plaintiff and her relatives—whereby she was placed in great bodily fear for herself, her children, and kindred.

6. Also that defendant has, for five years before the filing of the petition, been addicted to habitual drunkenness.

The petition was verified by affidavit. An answer was filed denying every allegation of the petition, and alleging that the plaintiff had, about April 1, 1872, deserted and abandoned defendant, her home, and children. The answer was verified by affidavit. At the June term, 1872, application was made by Mrs. Mead for alimony *pendente lite;* and also for the payment, by Mr. Mead, of a sum of money for fees and costs. This motion the court sustained on November 2, 1872.

At the same term Mead obtained leave to withdraw his answer and file a motion to strike out from plaintiff's petition " that portion of it commencing with the words

' that the defendant,' in the nineteenth line of first page, and ending with the words 'kindred and children,' in the twenty-fifth line of fourth page." This motion was over-ruled.

The cause was called for trial at the April term, 1873, of the Circuit Court. The taking of testimony commenced on May 5th, and was closed on the 9th, the court then taking the case under advisement. It was decided on the first day of the June term, 1873. The decree of the court is as follows:

" The court, being fully advised of and concerning the premises in this cause heretofore submitted to the court upon the pleadings and proofs, and, after hearing the evidence herein, being satisfied that the plaintiff is an injured and innocent party, doth order, adjudge, and decree that she be absolutely and forever divorced from the bonds of matrimony existing between her and said defendant, and that she be restored to all the rights and privileges of an unmarried person; and it is further ordered that the plaintiff have the exclusive care, custody, and control of the minor children of said plaintiff and defendant, until the further order of this court, and that the plaintiff recover of said defendant her costs herein expended, and have execution therefor."

A motion for a new hearing was overruled, and a bill of exceptions was filed on August 2, 1873, by which it appeared that, when the cause was called for trial, the defendant filed an affidavit in support of a motion for a continuance of the cause for two reasons, one being the absence of witnesses and the other the sickness of one of his counsel. The court overruled the motion, and defendant excepted. We see no error here. The witnesses who are asserted to be inaccessible appear by the record to have been all present in court, and all but one of them testified for defendant. No diligence or sufficient cause for a continuance is shown on the face of the affidavit; and this positive evidence disposes of this matter effectually.

1. A great mass of evidence was then laid before the court. The number of witnesses examined, including both parties, was thirty-four. Their testimony covered 200 pages of very close manuscript. It is not necessary to analyze it in detail, and a great portion of it might have been profitably omitted—not because it had no tendency to prove the allegations of the petition, but because it was, as we think, insufficient to produce conviction that they were well founded as to the first five causes assigned for a divorce. In fact the only statutory cause for a separation of the parties which we consider to be established by the evidence is that which charges the defendant with habitual drunkenness for five years next before the filing of the petition. The period which is named in the statute as sufficient to justify a decree for a divorce is one year.

On this head, without setting out the evidence in detail, we content ourselves with saying that we consider it ample to justify the decree in all its particulars. We might easily fill many pages with the citation of the instances of intemperance by which for many years the almost daily life of the defendant has been characterized. He appears to have come to the city of St. Louis from Jennings' Station, on the North Missouri Railroad, nearly every day, except Sunday, for years. His habit was to leave home about seven in the morning and to return about six in the evening. Not to dwell on the manner in which he spent the day in town, where he seems to have been engaged in no business contributory to the good of his family, he appears to have been almost invariably intoxicated when he got on the cars to return home in the evening. We find scarcely a single exception to this remark. There were very few cases in which he was not still under the influence of strong drink when he reached his home, after his ride in the cars, and the walk or ride to his house from the station, a distance of less than a mile. Repeated instances are given of grossly unbecoming behavior which we will not enumerate. We remain perfectly satis-

fied that this charge of habitual drunkenness, for many years preceding the commencement of this suit, is fully made out.

The other charges are subdivided into five particulars, but they may be grouped into two. They amount to the assertion of indignities which rendered the condition of the plaintiff intolerable, and of cruel and barbarous treatment. So far as we can judge, all that is said on these heads may be fairly referred to the brutality and general disorder of spirit produced by drunkenness. If the influence of strong drink could be eliminated from the character of the defendant; if all that appears to his disadvantage in this record could be purged of the effects of habits of intoxication, we are not at all convinced that anything would remain of which a court could take cognizance for the purpose of granting a divorce. We will not pursue this subject, for if one sufficient cause exists for the decree it is enough; and, as already stated, we are of opinion that one such cause is abundantly shown.

It is objected by the appellant that the court below should have found or declared the facts which it regarded as established by the evidence, and that, for the want of such a finding, the decree must be reversed.

Under the Practice Act of 1849 it was incumbent on the courts where any case was submitted to it—a jury being waived, or not required by law (sec. 2, Art. 15, p. 90, Session Acts of 1849)—to state in writing the finding as to the facts, and file this statement with the clerk. The judgment or conclusion of law then followed.

In the codification of the statutes, which occurred in 1855, this provision was omitted, perhaps unwisely; but it was certainly omitted, and no decision made under the act of 1849 can be authority for requiring the judgment of a court of law or the decree of a chancellor to recite the facts on which it is founded, since repeal of that act.

Formerly it was the practice in the United States Circuit Courts, sitting as courts of equity, to make a recital, in their decrees, of the facts examined and found by the court.

This practice prevailed at least as late as 1850, but it must have been condemned as inconvenient, for, by a rule which is now numbered eighty-six of the Rules of Equity Practice, revised and published in 1870, it is directed that, "in drawing up decrees and orders, neither the bill, nor answer, nor other pleadings, nor any part thereof, nor any other prior proceeding, shall be recited or stated in the decree or order, but the decree or order shall begin in substance as follows: 'This cause came on to be heard at this term and was argued by counsel; and, thereupon, upon consideration thereof, it was ordered, adjudged, and decreed as follows,'" etc.

The forms and traditions of chancery are more carefully preserved in the federal courts than elsewhere, and we are quite safe in guiding our practice by theirs, in cases of equitable jurisdiction, whenever a dispute arises about forms. The decree in this case is in the form which has for many years, perhaps for time immemorial, prevailed in this circuit. It is familiar to the profession that, from 1825 to 1845, it was provided by the statutes respecting divorce that "the Circuit Court, sitting as *a court of chancery*, shall have jurisdiction of all cases of divorce and alimony or maintenance;" that, in 1855, and since, all distinction between law and equity being abolished, the rule has been declared in somewhat different language, but to the same effect, "that all such cases shall be tried by the court without the assistance of a jury." And we fail to see in the form of the decree in this case any error whatever.

It is further objected that the statute conferring upon the Circuit Court the right to determine causes of divorce without the aid of a jury is unconstitutional, in that it impairs the right of trial by jury, secured by the Constitution of Missouri to every citizen.

The principal argument seems to be that the legislation respecting the practice in divorce cases is different now from what it was in 1825. This is a mistake, as has just

been shown. The practice, or at all events the statute reg-
ulating the practice, has been unchanged for more than fifty
years. As to right of "trial by jury," it is well known
that it refers to the right of personal security conferred,
when a man is charged with crime, by the privilege of being
judged by his peers; and when it is added that the statute
in question, and the 11th, 12th, and 13th sections of Article
9 of the Practice Act (pp. 1040, 1041 of 2 Wag. Stat.), have
repeatedly received the sanction of the Supreme Court, we
think it unnecessary to pause on this objection.

Since this opinion was written we have learned that Mr.
Mead has died. He was alive, however, when the case was
argued and submitted. Under these circumstances the
judgment will be entered as of the day on which it was
taken under advisement, which was January 28, 1876. Such
was the practice of the Supreme Court in the case of the
*Central Savings Bank* v. *Shine*, 48 Mo. 456, following the
ancient practice in England as laid down in *Cumber* v.
*Wane*, 1 Stra. 426.

All the judges concurring, the judgment of the Circuit
Court is affirmed.