SHINE'S ADMINISTRATOR, *Appellant*, v. THE CENTRAL SAVINGS BANK.

1.  **Guaranty**: PARTNERSHIP. It is no defense to an action on a guaranty given in favor of a firm that the credit asked for the firm was extended in the name of one of the members of the firm, if this is done with the consent of the other partners.

2.  ———: GENERAL RULES OF CONSTRUCTION. It is well settled that for the ascertainment of the intention of the guarantor the written guaranty must be looked to, and if there is room for doubt, or if uncertainty is to be found on the face thereof, the words used are to be received and accepted in the strongest sense against the party using them according to the maxim *verba fortius accipiuntur contra proferentem*. It is also equally well settled that when the intention is clearly expressed, or the terms of the guaranty are defined and ascertained, the liability of the guarantor cannot be extended beyond them by implication.

3.  ———: CASE ADJUDGED. Plaintiff's intestate wrote to the president of the defendant bank as follows: Hearing from P. O'Neil and Mr. Doyle that they could use advantageously some additional cash over and above the amount already had in your bank, and being desirous to promote their interests and to enable them to carry on their business efficiently, I will thank you to submit to your board, that if they will lend to O'Neil & Co. $15,000, I shall hold myself responsible for that amount.    *    *    If the Central (the bank) cannot conveniently make this advance, I will feel obliged to assist them in procuring it elsewhere. The bank had previously loaned

O'N. & D. $10,000 on their indorsed note. On the day when this note became due, the above letter was presented to the bank, and on the strength of it the bank discounted a new note of O'N. & D. for $10,000, and placed the proceeds to their credit. They had already some money on deposit, but not enough to meet the maturing note. As soon as the new note was discounted, they drew a check against their deposit and in favor of the bank, and with it took up the maturing note. They afterwards obtained a further loan of $5,000 from the bank. The bank defending the present action on the ground that the deceased had become liable as guarantor for O'N. & D.; *Held*, that the letter contemplated an advance of $15,000 over and above what the bank had previously loaned O'N. & D.; that the transaction in relation to the notes amounted only to the substitution of one security for another, and did not constitute an additional advance of money; that the deceased, therefore, never became liable on his guaranty; and that this was true whether the bank made it a condition precedent to the new loan that the proceeds should be used in taking up the maturing note or not.

4. ———: RATIFICATION. Acts of acquiescence or ratification will not make one liable upon a written guaranty for things which do not come within the terms of the guaranty.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

The third, fourth and fifth instructions given for the defendant, are as follows:

3. The court declares the law to be that if the defendant agreed to loan to O'Neil & Co. the $15,000 on the faith of the guaranty mentioned in the answer, and said collateral, without any conditions, and thereunder O'Neil & Co. were permitted to draw and obtain the money when and as they chose, and they drew $10,000 thereof and applied it to the payment of a note made by them and then due and payable by them to defendant for that amount; and they afterwards obtained and drew the further sum of $5,000, mentioned in the answer, making the $15,000, then this constitutes a loan of said money to them under said guaranty, and the application by them of $10,000 thereof, or any part thereof, to the payment of such note of said

firm, did not discharge said Shine from liability on his said guaranty, unless the court finds that the taking up of said note of O'Neil & Co. was a condition of the loan.

4.   If Peter A. O'Neil and Francis Doyle were partners, carrying on business in the firm name of O'Neil & Co., and the firm had its bank account with defendant, kept under the name of Peter A. O'Neil, and procured loans and discounts from the defendant, made deposits of money with defendant, and made its checks and drew out its money from such loans, discounts and deposits, in the name of Peter A. O'Neil, and the defendant in fact loaned to O'Neil & Co. the $15,000, under and on the faith of said guaranty and collateral, then, neither the fact that such account of the firm was kept under the name of Peter A. O'Neil, and such loan was entered in said account, nor that said notes signed by Peter A. O'Neil were taken when said loan was made, released said Shine from liabilities under said guaranty—provided the court is satisfied from the evidence that said Shine was made acquainted with the manner in which said loan was made, and said accounts kept, and assented to and approved the same.

5.   If the court finds that the guaranty set out in the answer, and given in evidence, was received by the defendant on the 30th day of March, 1868, and the defendant accepted the proposition therein contained, and then loaned to O'Neil & Co. $10,000, and agreed and was ready and willing to loan said firm the balance of the sum called for in said guaranty, and so notified said firm—and the defendant, on the 9th day of April, 1868, when required by O'Neil & Co., loaned them $5,000, the balance called for in said guaranty—and that afterwards, to-wit, on or about the 20th day of May, 1868, said Shine examined the books of O'Neil & Co., and thus and otherwise became informed of said loan having been made, and the form and manner in which it was done—and with full knowledge thereof he approved thereof, and of what defendant had done in the premises, and assented thereto—the court, sitting as a jury,

may infer therefrom that the loan in question was made in compliance with and in conformity to the terms of said guaranty, in which event the said Shine would be bound thereby.

*Thomas T. Gantt* for appellant.

The letter must be looked at for the ascertainment of the intention of the parties. In arriving at that intention the contract made by the guarantor is to be interpreted, if there be room for doubt, by the application of the rule *verba fortius accipiuntur contra proferentem.* When the intention is once ascertained, there can be no judicial enlargement of the contract. It is a canon of decision that a surety is not to be charged beyond the precise terms of his engagement. What these terms are is first to be denned, and in making this definition the guarantor or surety is to be treated precisely as any other person, whether stipulating for himself or others. But when these limits are once fixed, they are not to be extended by one hair's breadth. *Taylor v. McClung,* 2 Houston (Del.) 24; *Taylor v. Wetmore,* 10 Ohio 490; *Smith v. Montgomery,* 3 Texas 199; *Straton v. Rastall,* 2 T. R. 366, 370; *Bacon v. Chesney,* 1 Starkie's N. P. Rep. 192; *Walrath v. Thompson,* 6 Hill 540; *Bigelow v. Benton,* 14 Barb. 123; *Dobbins v. Bradley,* 17 Wend. 422; *Gates v. McKee,* 13 N. Y. 232; *McCluskey v. Cromwell,* 11 N. Y. 593; *Wright v. Russell,* 2 Wm. Blackstone 934; *Pearsall v. Summersett,* 4 Taunt. 593; *Myers v. Edge,* 7 D. & E. 254; *Bellairs v. Ebsworth,* 3 Camp. 52; *Weston v. Barton,* 4 Taunt. 673; *Allison v. Rutledge,* 5 Yerg. 193; *Grant v. Naylor,* 4 Cranch 224; *Cremer v. Higginson,* 1 Mason 323; *Russell v. Perkins,* 1 Mason 368; *Miller v. Stewart.* 9 Wheat. 680; DeGolyar on Merc. Guaranties, 387.

*Wm. F. Broadhead* and *Broadhead, Slayback & Haeussler* for respondent.

Even if Shine did not ratify the transaction, there

is really no substantial departure from the terms of the contract. It is admitted that the terms of a contract of guaranty are to be strictly construed. But like all other contracts it must receive the construction which is most probable and natural under the circumstances. *Decatur Bank v. St. Louis Bank,* 21 Wall. 298; *Dobbins v. Bradley,* 17 Wend. 422; *Fisher v. Cutter,* 20 Mo. 208; *Farmers Bank v. Bayless,* 35 Mo. 439; such was the construction of the letter given by the circuit court.

NORTON, J.—In this case the petition set forth that Eugene Shine, in his lifetime, before 1868, deposited for collection with defendant the note of Isaac Walker for $15,000, secured by deed of trust, maturing in 1870, with interest notes at six per cent. per annum, payable semi-annually; that the bank collected and appropriated to its own use the amount of said note with $450 interest paid in January, 1869; $450 paid in July, 1869; $450 paid in January, 1870, and $450 paid in July, 1870, together with the principal; making a total of $16,800 with interest from July, 1870, when payment was refused.

The answer of defendant admitted the deposit of the notes of Walker, but set up that after they were so deposited, Shine being in Cork, Ireland, executed an instrument in writing, as follows: "88 Patrick street, Cork, 13th March, 1868. Hon. Jos. O'Neil, President of Central Savings Bank, St. Louis, Mo. Hearing from P. O'Neil and Mr. Doyle, that they could use advantageously some additional cash over and above the amount already had of your bank, and being desirous to promote their interests, and enable them to carry on their business efficiently, I will thank you to submit to your bank that, if they will lend O'Neil & Co. $15,000, I will hold myself responsible for that amount, and will leave with you as collateral security the note and mortgage of Isaac Walker, which is at present in your vault for a like sum, say $15,000. If the Central cannot conveniently make this advance, I will feel

obliged to assist them in procuring it elsewhere." That this paper was on 30th of March, 1868, delivered to defendant; that by it Shine promised and agreed with defendant that if it would lend $15,000 to O'Neil & Co. he would hold himself responsible therefor, and would give Walker's notes as collateral ; that defendant accepted said agreement, and on or about 30th of March, 1868, upon the faith of said written agreement, lent $15,000 to O'Neil & Co., $10,000 thereof being lent on 30th of March, 1868, and $5,000 on 9th of April, 1868, of all of which Shine had due notice and approved thereof; that O'Neil & Co. failed to repay the said loan, and thereupon defendant applied the proceeds of Walker's notes to satisfy the said loan to O'Neil & Co.

Defendant also claimed that the liability of Shine to it on account of said guaranty, should be set off against plaintiff's demand.

Plaintiff in the replication to said answer denied that by the letter of 13th of March, 1868, Shine had promised defendant that if it would lend to O'Neil & Co. $15,000, he, Shine, would hold himself responsible therefor; but that Shine did by said letter propose to defendant that if it would advance to O'Neil & Co. $15,000 of additional cash over and above what the said O'Neil & Co. had already borrowed of defendant, that he, Shine, would be responsible therefor; that defendant did at no time advance to O'Neil & Co. $15,000 of such additional cash or any other sum, but that O'Neil & Co. had, prior to January, 1868, been a customer of defendant, and had an account in the name of said firm with said defendant which was well known to Eugene Shine; that about 20th of January, 1868, the account of O'Neil & Co. with defendant was closed, and a new account opened with defendant in the name of Peter A. O'Neil alone, to which were transferred all the money, credits and effects which were of O'Neil & Co. and of Peter A. O'Neil, and from and after the opening of said new account the said Francis Doyle could not, and only

Peter A. O'Neil could draw any money from said new account, and no money could be drawn therefrom by the checks of O'Neil & Co., or by their authority, but only by the checks or by authority of Peter A. O'Neil; and the firm of O'Neil & Co. was thereby discredited and damaged, and particularly Francis Doyle, son-in-law of Shine, was thereby discredited; and Shine had no knowledge of this change in the mode of keeping the account when he wrote the said letter of 13th of March, 1868, nor until he came to St. Louis in the latter part of May, 1868; that Peter A. O'Neil procured a discount on the 27th of January, 1868, by executing on that day a note for $10,000 at sixty days, to the order of James O'Neil, which note was discounted by defendant for the said Peter A. O'Neil, and defendant held said note when Shine's letter of 13th of March, 1868, was laid before it; that this letter had been sent by Shine to Peter A. O'Neil to be used according to its tenor for the use and behoof of O'Neil & Co., composed of Peter A. O'Neil and Francis Doyle, as defendant well knew; that Peter A. O'Neil, when the said note for $10,000 became due, to-wit, on 30th of March, 1868, presented the letter of Shine to defendant professing to accept the same, received the note of Peter A. O'Neil for $10,000 at sixty days, purporting to be made under said guaranty, and gave up the said note for $10,000, dated 27th of January, 1868, and then maturing, and it was then and there corruptly agreed that the giving up of this old note dated 27th of January, 1868, and the giving of the new note at sixty days dated 30th of March, 1868, and the payment of the discount on the last, should be called, treated, and described as an advance on March 30th, 1868, of $10,000 by defendant to the firm of O'Neil & Co. on the faith of the letter of guaranty of Shine: whereas plaintiff says, that this and no other is what occurred in respect of said guaranty of said Shine on 30th of March, 1868, between said defendant and said Peter A. O'Neil who then and there presented said letter of Shine to the defendant; and no advance of money was

then and there made by defendant to said O'Neil & Co., except as herein stated; and this is the same transaction which in the answer is called a lending of $10,000 by defendant in its ordinary and usual manner and course of business to the firm of O'Neil & Co.

On the trial in the circuit court judgment was rendered for defendant, from which plaintiff prosecuted his writ of error to the St. Louis court of appeals, where the judgment was affirmed, from which plaintiff has appealed to this court. It is assigned as principal ground of error that the trial court erred in giving improper and refusing to give proper instructions. Plaintiff asked five instructions all of which were refused except the first, which is as follows: "1. The letter of Eugene Shine, dated 13th of March, 1868, was a proposal to guarantee the Central Savings Bank for the advance to O'Neil & Co. of $15,000 of additional cash, over and above what the said O'Neil & Co. had already had of said bank; and if the advance which the bank claims to have made to said O'Neil & Co. upon the said guaranty consists in whole or in part of the renewal of any advance or loan before that time made by said bank to the said O'Neil & Co., or to any member of that firm, the defense of the bank fails, and the plaintiff must have judgment."

Of the instructions asked by plaintiff and refused by the court we insert only the one which we deem has a material bearing on the question in controversy. It is as follows: "2. If the Central Savings Bank, on the 27th of January, 1868, discounted for O'Neil & Co. a note of that date at sixty days, for $10,000, indorsed by James O'Neil and Peter A. O'Neil, placing the proceeds of the discount to the credit of the account of Peter A. O'Neil, in whose name the account of the said firm of O'Neil & Co. with said bank was then and thereafter kept; if on the 30th of March, 1868, when said note matured, said Peter A. O'Neil presented the letter of Shine, dated 13th of March, 1868, to the bank, and the bank then and there declared that it

accepted the proposal therein contained; if the said Peter A. O'Neil thereupon made and presented to the bank his note for $10,000, at sixty days from date, and the bank discounted it, carrying the proceeds of the discount to the credit of said account of Peter A. O'Neil, and the said Peter A. O'Neil then and there executed and delivered to said bank his check for $10,000, and the bank then and there surrendered to him the said note for $10,000, dated January 27th, 1868; if the balance to the credit of the said account of Peter A. O'Neil on the morning of the 30th of March, 1868, was $2,910.16, and no more, and no addition was made to it on said 30th of March, 1868, except the proceeds of said discount; and there were drawn against said account on said 30th of March, 1868, three checks, and no more, one for $567.74, one for $70, and one for $10,000, and the balance to the credit of said account at the close of banking hours on the 30th of March, 1868, and the morning of the 31st of March, 1868, was $2,094.62, and no more; then plaintiff must have judgment for the several sums of money received from Walker by the bank on the notes described in the petition, with interest from the times when they were respectively received."

It is insisted by counsel that the judgment should be reversed, first, because the money alleged to have been loaned by defendant was not loaned to O'Neil & Co., but to Peter A. O'Neil individually; and second, because defendant did not in fact advance to O'Neil & Co., as additional cash the sum mentioned in Shine's letter of guaranty.

As to the first point it may be observed that the evidence tended to show, and we think established the fact 1. GUARANTY: part- that the firm of O'Neil & Co., composed of nership. Peter A. O'Neil and Michael Doyle, a son-in-law of Shine, kept their account with the Central Savings Bank in the name of Peter A. O'Neil, and that through him and in his name and with the consent of the bank, all the business of the said firm was transacted after

the 27th of January, 1868. We are, therefore, of opinion that the first point made by plaintiff's counsel is not well taken and that the declaration of law asked by defendant to the effect that the mere fact that the account of the said firm was kept in the name of P. A. O'Neil, and its business conducted in his name alone did not relieve Shine from liability on his guaranty, provided its terms in all other respects were complied with.

As to the second point it may be said that it is so well settled as not to require the citation of authorities to estab-

2. ———: general rules of construction. lish it, that for the ascertainment of the intention of the guarantor the written guaranty must be looked to, and if there is room to doubt, or if uncertainty is to be found on the face thereof, the words used are to be received and accepted in the strongest sense against the party using them, according to the maxim *verba fortius accipiuntur contra proferentem.* It is also equally well settled that when the intention is clearly expressed, or the terms of the guaranty are defined and ascertained, the liability of the guarantor cannot be extended beyond them by implication.

Taking these rules for our guidance, and we think it is clear from Shine's letter as set up in defendant's answer,

3. ———: case adjudged. that Shine proposed to become responsible to defendant for the payment of $15,000 and allow it to hold the Walker note mentioned therein as collateral, only on the condition that defendant would advance to O'Neil & Co. that sum of money over and above what it had previously loaned said firm. If this proposal was accepted by defendant and in good faith fully complied with, then Shine's liability attaches, otherwise not. If the defendant, when Shine's guaranty was presented and accepted, instead of advancing additional cash, simply surrendered a note held by it on O'Neil & Co., indorsed by James O'Neil for $10,000 previously loaned said firm, taking at the same time or in lieu thereof another note for the like amount, with Walker's note to Shine as

collateral, we cannot see on what principle Shine can be held liable on the guaranty. In other words, if the bank only gave up the note of the firm of O'Neil & Co., secured by the endorsement of James O'Neil, thereby releasing the security, and took the note of P. A. O'Neil, the representative of O'Neil & Co., and substituted the note on Walker as collateral in lieu of the security released, the object of Shine, as expressed in his letter, instead of being promoted, was defeated, and if the bank was in any manner a party to this proceeding it can claim nothing of Shine and can assert no right to hold the Walker note as collateral, or its proceeds. It was clearly not the proposition of Shine to authorize the bank to substitute him in the place of another security for money which had already been loaned to the firm. His proposition was not to become surety for money which had been advanced to said firm, but only for money to be advanced in addition to what had been loaned.

The evidence tended to show the following state of facts : that from and after the 27th day of January, 1868, the account of O'Neil & Co. with the Central Savings Bank was kept in the name of Peter A. O'Neil; that on the 27th day of January, 1868, O'Neil & Co. made their note, payable in sixty days, which was indorsed by P. A. O'Neil and James O'Neil; that said note was on that day discounted by the bank and the proceeds of the discount placed to the credit of Peter A. O'Neil; that on the 30th day of March, 1868, when said note matured, the sum of $2,910.16 stood as credit on the account of O'Neil & Co. as kept in the name of P. A. O'Neil; that the letter of Shine was on that day presented to the bank, which agreed to accept the proposal it contained ; that Peter A. O'Neil said the firm wanted but $10,000 that day, and thereupon made his note to the bank at sixty days for $10,000, which was discounted and the proceeds placed to his credit; that the note of O'Neil & Co., executed on the 27th day of January, 1868, and due on that day, was then surrendered to said O'Neil, he having drawn his check against said account

for the exact amount of said note; that the line of discounts of O'Neil was diminished on the said 30th day of March, 1868, from $2,910.16 to $2,094.62; that subsequent thereto on the 9th day of April, 1868, defendant advanced $5,000 to said O'Neil & Co.

It is evident that what transpired between P. A. O'Neil and the bank on the 30th day of March, 1868, made but one transaction. The presentation of Shine's guaranty, its acceptance by defendant, the execution of the note for $10,000, the immediate application of the proceeds of its discount to the payment of the note of the 17th of January, 1868, just matured, and the surrender of said note to O'Neil are so connected, linked and interwoven as to constitute but one chain, and considering all these facts and circumstances together the conclusion is irresistible that what occurred amounted to nothing more than giving up the note of O'Neil & Co., made on the 27th day of January, 1868, secured by the indorsement of James O'Neil, the father of Peter A. O'Neil, and substituting therefor another note at sixty days for the same amount, taking the note of Walker to Shine as collateral security, without, in fact, advancing a single dollar of additional cash to O'Neil & Co. or extending their line of discount with the bank to the extent of a single farthing, which was an express requirement of Shine's guaranty.   If Peter A. O'Neil on the presentation to the bank of Shine's letter had said : Here is Shine's letter, he offers to guarantee an advance of $15,000 to O'Neil & Co. of additional cash over and above the amount already had by them of your bank; the firm does not desire any additional cash, but they owe you a note, with James O'Neil as indorser for $10,000 heretofore loaned the firm, which we wish to take up by substituting another note at sixty days for the like amount, which we will secure by the collateral mentioned in Shine's letter, and will call for the other $5,000 when wanted; and the bank had assented to this arrangment; it is evident that Shine would not have been bound thereby, and that the

bank would not have acquired any right to the note of Walker. Although these words were not in fact uttered, they are fully supplied by the circumstances attending the transaction, and these circumstances, which have been above detailed, speak the same sentiment in a manner quite as unmistakable as if the words supposed had been actually spoken.

The defendant could not close its eyes upon the fact that it was not advancing to O'Neil & Co. $15,000 of additional cash as required by the terms of Shine's guaranty, but only substituting one security for another. The character of the transaction was forced upon the knowledge and attention of defendant as much so as if O'Neil had used the words in the hypothetical case heretofore put. What was done on the 30th day of March, 1868, was not according to Shine's contract, and as Shine's liability and defendant's rights are governed alone by the contract of guaranty, we are of the opinion that the second instruction asked by plaintiff and refused by the court, ought to have been given. The trial court, in the first instruction which it gave for plaintiff, recognized the correct principle by which the rights of plaintiff and defendant were to be determined, and we cannot see upon what ground the court refused to give plaintiff the benefit of the principle by applying it to the facts detailed in the second instruction, there being evidence tending to establish each one of the facts therein stated.

The third instruction given for defendant is erroneous in this, that it submits as a test by which Shine's liability is to be determined, what the bank agreed to do, rather than what it actually did, and also in requiring a finding that the bank made it a condition precedent to the loan that O'Neil should take up with the proceeds of the loan, the note of January 27th, 1868, before a verdict could be found for plaintiff. If the bank was informed by the very nature of the transaction that it was violative of Shine's intention, or that the purpose of O'Neil was to thwart the

design of Shine as expressed in his guaranty, it became as much a party to the fraud as if it had originated and proposed it as a condition to the loan.

The fourth and fifth instructions are erroneous in this, that they create and fix a liability on Shine by parol, which **4. ——: RATIFICATION.** could only be created under the law by writing.

In the case of *The Bank v. Shine*, 48 Mo. 456, to which we have been cited, the only real point considered by the court was as to whether it was the duty of the bank to notify Shine of its acceptance of this guaranty. Judgment reversed and cause remanded. All the judges concur except Judge HENRY, who dissents.