NOTE. — The chancellor has directed that the opinion in this case, filed as a memorandum in 1917, be now printed as an opinion in connection with, and immediately following, that in Vogler
v. Vogler, supra. — Rep. *Page 427 
On August 8th, 1893, the petitioner filed a petition for divorce from her then husband, and such proceedings were had that the late Isaac S. Taylor, Esq., to whom the cause was referred as special master, took testimony, and in a report dated January 17th, 1894, certified that he was of opinion that all the material facts charged in the petition were true, and that a decree of divorce should be made in the case for the cause of desertion. Mr. Flemming (her solicitor) informed the petitioner of this finding of the special master, and said that she should pay $22.56, the special master's fees. This the petitioner did not do, as she did not have the money. She, however, believed her divorce had been granted, and on December 25th, 1896, she was married to Martin Wright, a veteran of the civil war, who died on February 27th, 1900. The petitioner has now discovered that no decree of divorce was entered in the cause.
The master's report, although dated January 17th, 1894, was not filed until January 17th, 1896, just two years afterwards. In the files of the papers in the case is a letter from Mr. Taylor, the master, to the late Vice-Chancellor Pitney, in which he acknowledges the receipt of a note from the vice-chancellor. In this letter Mr. Taylor states that he delivered his report to the solicitors (Flemming Anderson) on, or possibly the day after, the report was dated (January 18th, 1894), and he says that in the then last January (1896) the chancellor showed him a letter which he had received from the petitioner, complaining about the long delay in her case. He further says in his letter that his fees had never been paid; that he had frequently sent a bill to the solicitors and that they said they were holding the report because they could get no money from their client. There is another letter in the files, one from Joseph Anderson, of the firm of Flemming Anderson, dated January 24th, 1896, directed to the clerk in chancery, in which he informs him that, as surviving member of the firm, he desires that no order, formal or otherwise, be entered except upon personal application by him, as he did not want to be made liable for any more costs in *Page 428 
the matter. Attached to the letter of Mr. Taylor to the vice-chancellor is a typewritten copy of the form of a letter directed to Mr. Taylor, dated January 28th, 1896, the day after the date of Mr. Taylor's letter to the vice-chancellor. This typewritten copy is undoubtedly a copy of a communication which Vice-Chancellor Pitney sent to Mr. Taylor, the vice-chancellor having undoubtedly lodged the letter and copy with the clerk for preservation among the files. In the copy of the letter, apparently sent to Mr. Taylor, the vice-chancellor says that he would decline to advise the decree until the master's fees were paid, and should say that inquiry should be made as to whether the petitioner had paid her counsel enough to cover those fees or not, and, if not, then she must pay them or establish her right to sue in forma pauperis.
The petitioner now applies to enter a final decree of divorcenunc pro tunc as of the date of the filing of the master's report, January 17th, 1896, which is prior to her marriage to Mr. Wright, which took place on December 25th, 1896.
The court has power to grant this motion. Mr. Bishop, in his work on "Marriage, Divorce and Separation" (vol. 2 § 687), says: "There may be nunc pro tunc judgment when the case falls within the principles on which such judgments are allowed in other suits."
Citing Mead v. Mead, 1 Mo. App. 247, 254; Webber v.Webber, 83 N.C. 280. The court in the Mead Case said:
"Since this opinion was written we have learned that Mr. Mead has died. He was alive, however, when the case was argued and submitted. Under these circumstances the judgment will be entered as of the day on which it was taken under advisement, which was January 28th, 1876. Such was the practice of the supreme court in the case of the Central Savings Bank v. Shine, 48 Mo. 456, following the ancient practice in England as laid down inCumber v. Wane, 1 Stra. 426."
And the court in the Webber Case said:
"It is suggested that the action for a dissolution of the marriage tie, the end and object of which are consummated *Page 429 
by death rendering a judgment needless, does not fall under the control of fiction adopted for other and different purposes. While the suggestion is not without force, we can find no legal ground for its exemption from the operation of a principle applicable to all other actions."
There is nothing in Dunham v. Dunham, 82 N.J. Eq. 395, which militates against the entry of a decree for divorce nunc protunc on the application of the living petitioner, who was entitled to it at the time it could and should have been granted. The Dunham Case only decided that a pending divorce abates upon the death of either party without surviving interest in anyone, and that a decree nisi of divorce may not be made absolute by a final decree after the death of one or the other of the parties, and which could not have been entered during the lifetime of both. Of course, it could not, because the surviving party was not entitled to the decree in the lifetime of the other one. Not so in the case before me, for here the surviving petitioner was entitled to the divorce at and at all times after the day when the master's report was filed.
Nor is there anything in the Divorce act of 1907 which would prevent the entry of a nunc pro tunc decree. By section 34 of that act it is provided that the act shall take effect January 1st, 1908, but that nothing in it contained shall affect proceeding in any suit pending at the time it goes into effect, so far as relates to the jurisdiction of the court, c., but the further proceedings and practice in such actions shall be in accordance with that act as nearly as may be practicable. Now, one of the proceedings prescribed by the act of 1907 is, that if the court shall be of opinion that the petitioner is entitled to a decree of divorce, a decree nisi shall be entered. But it must be perfectly obvious that no decree nisi can now be entered in this case, and that, because the defendant is not alive, and, therefore, could neither appeal nor show cause against making the decree nisi final. But, more than that, the petitioner before me was entitled to a final decree of absolute divorce some eleven years before the divorce nisi statute went into effect. *Page 430 
There is nothing in the following cases cited by me in Dunham
v. Dunham which militates against the power of the court to grant a decree of divorce nunc pro tunc in favor of a living petitioner after the death of a defendant. In Chase v.Webster, 46 N.E. Rep. 705, it was held that the death of either party before a decree nisi has been made absolute, and beforethe time it could be made absolute, puts an end to the suit. Inre Crandall, 196 N.Y. 127, it was hold that an action for divorce abates with the death of the party bringing it. InHunt v. Hunt, 75 Misc. R. (N.Y.) 209, it was held that an action for divorce abates upon the death of the plaintiff. InByron v. Byron, 134 App. Div. (N.Y.) 320, it was held that if one party dies after the entry of the interlocutorydecree, final decree thereafter entered is unwarranted, extra-judicial and ineffective. These cases, it must be perfectly apparent, hold only that no final decree of divorce may be entered if the successful party were not entitled to it untilafter the defeated party has died. Of course, no final decree may be entered after the death of one of the parties whose marriage has already been dissolved by death, where the successful party was not entitled to a decree in the lifetime of the decedent, and that is all that was decided by me in theDunham Case. There is nothing in these cases which suggests that the power of the court to enter a decree of divorce nuncpro tunc in favor of the successful party, after the death of the defeated party, where the successful party was entitled to have had a decree entered in the lifetime of the deceased party, does not exist, and, as seen, Mr. Bishop lays it down that there may be nunc pro tunc judgment in these cases; and in Mead v.Mead and Webber v. Webber such decrees were actually entered. These are the authorities which I have been able to find for the proposition, and I have found none to the contrary.
It is laid down in Dan. Ch. Pl. Pr. (6th Am. ed.) [*]1017, that decrees nunc pro tunc will be made after very long intervals have elapsed, and incidents are cited of such entries being made after twenty-three and even after seventy-nine years. In Ruckman v. Decker, 27 N.J. Eq. 244, Chancellor *Page 431 
Runyon, in 1876, ordered the filing nunc pro tunc of a decree drawn in conformity to an opinion delivered by his predecessor, Chancellor Zabriskie, and this some three years after the former chancellor's term had expired; and Chancellor Runyon said in his opinion, quoting Lord Eldon in Donne v. Lewis, 11 Ves. 601:
"The court will enter a decree nunc pro tunc if satisfied from its own official documents that it is only doing now what it would then."
Nor is there anything in Seibert v. Seibert,86 Atl. Rep. 535, in which our court of errors and appeals decided that where, pending an appeal by the wife from a decree of divorcenisi in favor of the husband, the wife died, the suit thereupon abated. It is to be observed that there was no final decree in that case, and as, pending the appeal from the decree nisi, no final decree could be entered, because the suit abated upon the death of the wife. Of course it did, because the time had not arrived when the husband was entitled to a final decree, and, as already remarked, the court could not thereafter dissolve a marriage which had already been dissolved by death. The application in Seibert v. Seibert was for an order upon the respondent to pay counsel fees for services rendered the wife in her lifetime, and the court reached the conclusion that no order could be made as the suit had abated. In Seibert v. Seibert, as in the other cases above mentioned, the question of a nuncpro tunc entry of a decree was in nowise involved, and, consequently, in nowise ruled upon.
Finding, as I do, that the authorities hold that a final decree of divorce nunc pro tunc may be entered in favor of asuccessful petitioner for divorce, even after the death of the defendant, where the petitioner is still living and was entitledto have had such a decree in the lifetime of the defendant, and, finding no authority to the contrary, I am clearly of opinion that a decree of divorce may be entered in this case in favor of the petitioner against the defendant as of the date when the cause was submitted to the court, at which time, and for several years thereafter, the defendant was alive. Let a decree be entered accordingly. *Page 432